Devin Andrich
3104 East Camelback Road, #1246
Phoenix, Arizona 85016
Telephone:   (480) 548-0161
E-mail: DevinAndrich@gmail.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Devin Andrich, a single man,<br><br>        Plaintiff,<br><br>v.<br><br>Navient Solutions, Inc., a Delaware corporation; Navient Solutions, LLC, a foreign limited liability company; Pennsylvania Higher Education Assistance Agency, a Pennsylvania corporation; Performant Recovery Services, Inc., a California corporation; and  DOES I-X, as individuals or entities,<br><br>        Defendants. | No. CV-18-02766-PHX-DLR<br><br>**FIRST AMENDED COMPLAINT**<br><br>**(Violation of 15 U.S.C. §1681 et seq.; Violation of 15 U.S.C. §1692 et seq.; Breach of Contract; Breach of the Covenant of Good Faith & Fair Dealing; Misrepresentation And Defamation)** |

Plaintiff, Devin Andrich, pursuant to this Court's Order dated September 1, 2018 (*Dkt. #9*), files his First Amended Complaint against Defendants, alledging as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Devin Andrich is a resident of Maricopa County, Arizona ("Andrich" or "Plaintiff").

1

2.     On information and belief, Defendant Navient Solutions, Inc., was at all times relevant, a Delaware corporation, authorized to do business in the State of Arizona.

3.     On information and belief, Defendant Navient Solutions, LLC, was at all times relevant, a Delaware limited liability company, authorized to do business in the State of Arizona.

4.     Defendants Navient Solutions, Inc. and Defendant Navient Solutions, LLC are collectively herein referred to as, "Navient."

5.     On information and belief, Defendant Pennsylvania Higher Education Assistance Agency, Inc. ("PHEAA"), was at all times relevant, a Pennsylvania corporation, authorized to do business in the State of Arizona.

6.     On information and belief, Defendant Performant Recovery Services, Inc. ("Performant"), was at all times relevant, a Delaware corporation, authorized to do business in the State of Arizona.

7.     Defendants, Does I-X, as individuals or entities ("Does"), and the unknown heirs and devisees of any of the Does, as natural persons, who may be deceased, with a singular or plural, or fictitious names designating an individual or individuals, masculine or feminine, or legal entities, whose present identities are unknown to Plaintiff.  Plaintiff will request leave of the Court to insert the true identity of any such Defendants when discovered as if correctly named originally and who are liable for all or part of Plaintiff's claims herein.

8.     Defendants caused events or allowed acts or events to occur in Maricopa County, Arizona out of which the following causes of action arise.

9.     This Court has jurisdiction over this action pursuant to 15 U.S.C. §1681, 15 U.S.C. §1692 et seq., 28 U.S.C. §§1331, 1367 and 2201(a).

10.    The Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332, based on the parties' diversity of citizenship and because the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000).

11.    Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391, and this Court has personal jurisdiction over Defendants and each of them, by reason of the fact that, among other things, many of the events giving rise to this action arose in Arizona, including within Maricopa County.

## FACTUAL ALLEGATIONS

### Plaintiff Enters Into a Loan Agreement With Original Loan Servicer Sallie Mae And Sallie Mae Assigns the Loan Agreement to Defendant Navient

12.    On/about October 5, 2003, Plaintiff entered into a written agreement with federal student loan servicer, Sallie Mae (the "Loan Agreement").

13.    Under the terms of the Loan Agreement, Sallie Mae consolidated all of Plaintiff's student loans federally insured by guarantor, the United States of America, or its designated agent.

14.    On information and belief, under the terms of the Loan Agreement the Plaintiff's consolidated student loans are each classified as, a "Federally Guaranteed Student Loan."

15.    On information and belief, under the terms of the Loan Agreement, Plaintiff would make monthly payments to Sallie Mae or its designated assignee.

16.     Under the terms of the Loan Agreement and the section labeled "Borrower's Rights and Responsibilities," Paragraph 2, Plaintiff would update his permanent address with Sallie Mae or its designated assignee when Plaintiff changed permanent mailing addresses.

17.     Under the terms of the Loan Agreement and the section labeled "Borrower's Rights and Responsibilities" Paragraph 2, Plaintiff would notifiy Sallie Mae or its designated assignee when Plaintiff's status changed that would affect Plaintiff's Loan Agreement.

18.     Under the terms of the Loan Agreement, Sallie Mae or its designated assignee would service Plaintiff's consolidated student loans at a fixed interest rate of 3.625% per annum until Plaintiff satisfied the outstanding loan balance.

19.     Under the terms of the Loan Agreement and Paragraph 8 of Borrower's Rights and Responsibilities, "Upon request, [Sallie Mae or its designated assignee] will provide [Plaintiff] with a deferment application that explains [Plaintiff's] elligibility requirements," to Plaintiff's permanent address.

20.     Under the terms of the Loan Agreement and Paragraph 8 of Borrower's Rights and Responsibilities, Plaintiff has a right to defer or postpone repayments under the Loan Agreement to Sallie Mae or its designated assignee, while Plaintiff is, "…experiencing an economic hardship as determined by federal law."

21.     Under the terms of the Loan Agreement and Paragraph 9 of Borrower's Rights and Responsibilities, Sallie Mae or its designated assignee is required to grant

4

Plaintiff a forbearance if Plaintiff has, "a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of [Plaintiff's] total monthly gross income."

22.     On information and belief Sallie Mae and its assignees entered into an agreement with loan guarantor, Defendant PHEAA, regarding the servicing of all federally insured student loans, including Plaintiff's consolidated student loans (the "Guarantor Agreement").

23.     On information and belief, under the terms of the Guarantor Agreement, Plaintiff is an intended third party beneficiary.

24.     On information and belief, under the terms of the Guarantor Agreement, Defendant Navient is required to deliver notices and correspondence to the borrower's permanent address that the borrower provides to Defendant Navient.

25.     On information and belief, under the terms of the Guarantor Agreement, Defendant Navient is required provide the borrower with deferment or forbearance applications upon the borrower's written request.

26.     On information and belief, under the terms of the Guarantor Agreement, Defendant Navient is required to review the borrower's deferment or forbearance applications, prior to declaring a default under the loan agreement with the borrower.

27.     On information and belief, under the terms of the Guarantor Agreement, Defendant Navient is required to report to PHEAA, the results of reviewing a borrower's deferment or forbearance application when declaring a default under the loan agreement with the borrower.

28.     On infromation and belief, Sallie Mae notified Plaintiff that Sallie Mae sold or otherwise assigned the Loan Agreement to Defendant Navient.

29.     Under the terms of the Loan Agreement, Defendant Navient as the Loan Agreement's assignee was bound by the terms of the Loan Agreement originally entered into between Sallie Mae and Plaintiff.

**Plaintiff While Incarcerated Mails Numerous Correspondence to Defendant Navient Updating Plaintiff's Permanent Addresses And Requests Deferment And Forberance Applications Due to Plaintiff's Documented Economic Hardship, But Defendant Navient Ignores Plaintiff's Correspondence**

30.     Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

31.     On/about February 18, 2014, the State of Arizona indicted Plaintiff on suspicion of misappropriation of client funds in Maricopa County Superior Court Case No.: CR2014-108114 – *State of Arizona v. Andrich*.

32.     On July 8, 2015, the *State of Arizona v. Andrich* Court sentenced Plaintiff to three-and-one-half (3.5) years in prison.

33.     On July 10, 2015, Plaintiff began serving his prison sentence at the Arizona Department of Corrections ("ADC").

34.     On August 17, 2015, ADC transfer Plaintiff to a prision in Tucson, Arizona.

35.     On December 22, 2015, Plaintiff drafted and mailed a letter via United States mail to Defendant Navient.

36.     Plaintiff's December 22, 2015 letter to Defendant Navient informed Defendant Navient of Plaintiff's then-permanent address in Tucson, Arizona.

37.     Plaintiff's December 22, 2015 letter to Defendant Navient enclosed a form created by Defendant Navient that Defendant Navient instructs borrowers such a Plaintiff to use when requesting a student loan payment defermant or forbearance under the Loan Agreement.

38.     Plaintiff's December 22, 2015 letter to Defendant Navient was not returned to Plaintiff's then-permanent address as "undeliverable."

39.     Between December 22, 2015, and the date of this First Amended Complaint, Defendant Navient neither responded to Plaintiff's December 22, 2015 request for a student loan payment defermant or forbearance, nor mailed any correspondence to Plaintiff's then-permanent address, warning Plaintiff of a pending or possible default under the Loan Agreement.

40.     On October 21, 2016, Plaintiff drafted and mailed a letter via United States mail to Defendant Navient, updating Plaintiff's then-permanent address and requesting the status of Plaintiff's student loan payment defermant or forbearance application submitted to Defendant Navient, or alternatively, requesting a student loan payment defermant or forbearance.

41.     Plaintiff's October 21, 2016 letter to Defendant Navient informed Defendant Navient of Plaintiff's then-permanent address in Safford, Arizona.

42.     Plaintiff's October 21, 2016 letter to Defendant Navient was not returned to Plaintiff's then-permanent address as "undeliverable."

43.     Between October 21, 2016 and the date of this First Amended Complaint, Defendant Navient neither responded to Plaintiff's October 21, 2016 request for a student loan payment defermant or forbearance, nor mailed any correspondence to Plaintiff, warning Plaintiff of a pending or possible default under the Loan Agreement.

**Plaintiff is Released From Prison And Discovers That Defendant Navient Did Not Enter Plaintiff's Student Loan Into Deferment or Forbearance, But Instead Immediately Defaulted Plaintiff's Student Loan to Illegally Recoup Funds From Federal Loan Guarantor PHEAA**

44.     Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

45.     On September 1, 2017, Plaintiff was released from prison and elligible to attend college.

46.     On October 1, 2017, Plaintiff drafted and mailed a letter via United States mail to Defendant Navient.

47.     Plaintiff's October 1, 2017 letter to Defendant Navient informed Defendant Navient of Plaintiff's updated permanent address in Phoenix, Arizona.

48.     Plaintiff's October 1, 2017 letter to Defendant Navient requested a student loan payment defermant or forbearance under the Loan Agreement.

49.     On November 1, 2017, Navient mailed a letter via United States mail to Plaintiff, stating that Defendant Navient could not approve Plaintiff for a student loan payment defermant or forbearance under the Loan Agreement, because Defendant Navient declared and entered Plaintiff's default under the Loan Agreement.

50.     Upon Defendant Navient declaring and entering Plaintiff's default under the Loan Agreement, Defendant Navient made numerous false statements to Defendant PHEAA that Plaintiff defaulted under the Loan Agreement.

51.     Upon Defendant Navient declaring and entering Plaintiff's default under the Loan Agreement, Defendant Navient made false numerous statements to several credit reporting agencies that Plaintiff defaulted under the Loan Agreement.

52.     Upon Defendant Navient declaring and entering Plaintiff's default under the Loan Agreement, Defendant Navient subsequently sold or otherwise assigned its rights under the Loan Agreement to Defendant PHEAA.

53.     Upon Defendant PHEAA acquring the Defenant Navient's  declaring and rights under the Loan Agreement, Defendant PHEAA made numerous false statements to several credit reporting agencies that Plaintiff defaulted under the Loan Agreement.

54.     On/about December 1, 2017, Defendant PHEAA retained debt collector Defendant Performant to collect from Plaintiff, the purported outstanding loan balance, default interest and fees under the Loan Agreement.

55.     On March 21, 2018, Defendant Performant mailed Plaintiff a letter, demanding One Hundred Ninety One Thousand Six Hundred Seven Dollars and 43/100 ($191,607.43) from Plaintiff, stating that Defendant Performant's March 21, 2018 correspondence was from a debt collector and an attempt to collect a debt.

56.     As a result of Defendant Navient entering a Loan Agreement default against Plaintiff, Plaintiff cannot apply for federal loan programs necessary for Plaintiff to pay tuition and attend college.

9

57.     As a result of Defendant Navient entering a Loan Agreement default against Plaintiff, as of the date of this First Amended Complaint, Plaintiff has missed three (3) semesters of school neccesary for Plaintiff work in a trade or profession other than practicing law.

58.     Under the terms of Plaintiff's sentencing and probation, the State of Arizona and *State v. Andrich* Court require Plaintiff to attend school and obtain gainful, lucrative employment in furtherance of paying a Criminal Restitution Order.

59.     As of the date of Plaintiff's First Amended Complaint, Plaintiff contacted Equifax, Experian and TransUnion to dispute the accuracy of the information that Defendants, as well as, Equifax, Experian and TransUnion reported about Plaintiff.

60.     Beginning April 14, 2018, Plaintiff contacted Defendants, advising Defendants that its trade lines on Plaintiff's Equifax, Experian and TransUnion credit reports was reflecting that Plaintiff defaulted under the Loan Agreement and that it was causing Plaintiff problems with being approved for credit.

61.     Depsite Defendants PHEAA's and Performant's actual knowledge that Plaintiff objectively did not default under the Loan Agreement, on May 4, 2018, Defendant Performant (on behalf of Defendant PHEAA), delivered correspondence to Plaintiff stating that Defendant Performant and PHEAA would not remove the trade line on Plaintiff's Equifax, Experian and TransUnion credit reports that Plaintiff defaulted under the Loan Agreement, but rather add language, indicating that the matter was in dispute.

62.    On November 7, 2018, Plaintiff memorialized Defendants' ongoing violations of the Fair Credit Reporting Act against Plaintiff's credit reports in correspondence to Equifax, Experian and TransUnion.

## LEGAL CLAIMS

### COUNT ONE
**(Defendants Navient, Violated the Fair Credit Reporting Act 15 U.S.C. §1681 et seq. When Making False Statements to Numerous Credit Reporting Agencies That Plaintiff Defaulted on Federally Guaranteed Loan Agreement )**

63.    Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

64.    Under the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA") furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information reported about them, *to wit*:

After receiving notice pursuant to section 611(a)(2) [§ 1681*i*] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681*i*];

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for

purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –

(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

*See* 15 U.S.C. § 1681*s*-2(b)(1).

65.     On or around November 7, 2018, Plaintiff contacted Equifax, Experian and TransUnion to dispute the accuracy of the information being reported about him.

66.     Upon information and belief, pursuant to 15 U.S.C. § 1681*i*(a)(2), Defendant Navient received notification of this dispute from Equifax, Experian and TransUnion.

67.     By the time Defendant Navient received this credit bureau dispute, Defendant Navient, directly and via Defendant Navient's attorneys of record, had already been contacted on numerous occasions by Plaintiff, advising Defendant Navient that its trade line on Plaintiff's Equifax, Experian and TransUnion credit reports was reflecting that Plaintiff defaulted under the Loan Agreement and that it was causing Plaintiff problems with being approved for credit.

68.     Defendant Navient failed to conduct a reasonable investigation into the accuracy of information related to the disputed trade line, in violation of Section 1681*s*-2(b)(1).

69.     Notwithstanding Defendant Navient's actual knowledge that Defendant Navient breached its duties under the Loan Agreement terms, specfically Borrower's Rights and Responsibilities Paragraphs 2, 8, & 9; declared a default to Plaintiff and

Defendant PHEAA; and made false statements to Defendant PHEAA, Equifax, Experian and TransUnion that Plaintiff defaulted under the Loan Agreement, Defendant Navient's failure to conduct a reasonable investigation of the accuracy of its reporting of this adverse information shows a reckless disregard for Plaintiff's rights under the FCRA.

70.     In addition to the violation as described above, Defendant Navient failed to satisfy its duty under Section 1681*s*-2(b) of updating incomplete or inaccurate information it had previously reported to Equifax, Experian and TransUnion upon receipt of each notice from Equifax, Experian and TransUnion that Plaintiff disputed the accuracy of the previously reported information.

71.     Defendant Navient's failure to report that Plaintiff had not defaulted under the Loan Agreement was a failure to accurately update the information because it was "misleading in such a way and to such an extent that it [could] be expected to have an adverse effect" on Plaintiff. *Gorman v. Wolpoff & Abramson, LLP, et al.*, 584 F.3d 1147 (9th Cir. 2009); *See also Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

72.     As a direct and proximate result of Defendant Navient's willful and/or negligent refusal to comply with the FCRA as outlined above, Plaintiff has suffered substantial loss and damage including, but not limited to: economic loss due to Plaintiff's inability to apply for and obtain federally-insured student loans, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling Plaintiff to an

award of actual damages in amounts to be proved at trial, plus costs of this action pursuant to 15 U.S.C. § 1681*o*.

73.     As a direct and proximate cause Defendant Navient's negligent or willful failure to perform its duties under the Fair Credit Reporting Act, Plaintiff is chilled from applying to and taking college courses, necessary for Plaintiff to pursue a new career after Plaintiff's incarceration.

74.     As a direct and proximate cause Defendant Navient's negligent or willful failure to perform its duties under the Fair Credit Reporting Act, Plaintiff has suffered damages, mental anguish, suffering, humiliation and embarrassment, due to Plaintiff's inability to obtain federal student loans necessary for Plaintiff to attend college; obtain new skills and degrees and use the new skills and degrees to obtain gainful, lucrative employment as required under the *State v. Andrich* terms of Plaintiff's probation in order to satisfy a Criminal Restitution Order.

75.     Defendant Navient's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Defendant Navient, pursuant to 15 U.S.C. § 1681*n*(a)(2).

THEREFORE, Plaintiff requests Judgment against Defendant Navient, as follows:

(a)     For an Order declaring that Defendant Navient has violated Plaintiff's rights under the Fair Credit Reporting Act 15 U.S.C. §1681 et seq.;

(b)     For Plaintiff's actual, punitive and statutory damages, provided by 15 U.S.C. § 1681*n*(2) in an amounts to be proven at trial;

14

(c)     For pre-interest and post-interest (if applicable) at the highest rate allowed by law;

(d)     For attorneys' fees (should Plaintiff retain an attorney), costs and expenses as provided for by 15 U.S.C. § 1681*n*(3) & 15 U.S.C. § 1681*o*(2); and

(e)     For such other and further relief as this Court deems just and proper under the circumstances.

## COUNT TWO
**(Defendant PHEAA And Defendant PHEAA's Agent, Defendant Performant, Violated the Fair Credit Reporting Act 15 U.S.C. §1681 et seq. When Making False Statements to Numerous Credit Reporting Agencies That Plaintiff Defaulted on Federally Guaranteed Loan Agreement )**

76.     Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

77.     After informed by Plaintiff that under the terms of the Loan Agreement, Plaintiff updated his permanent address and sought a deferment or forbearance, Defendant Navient ignored Plaintiff's request, breached the terms of the Loan Agreement and declared and entered a Loan Agreement default against Plaintiff.

78.     After entering a default under the Loan Agreement, Defendant Navient sold or otherwise assigned Defendant Navient's rights under the Loan Agreement to Defendant PHEAA.

79.     Under the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA") furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information reported about them, *to wit*:

After receiving notice pursuant to section 611(a)(2) [§ 1681*i*] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681*i*];

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –

  (i) modify that item of information;
  (ii) delete that item of information; or
  (iii) permanently block the reporting of that item of information.

*See* 15 U.S.C. § 1681*s*-2(b)(1).

80.     On or around November 7, 2018, Plaintiff contacted Equifax, Experian and TransUnion to dispute the accuracy of the information being reported about him.

81.     Upon information and belief, pursuant to 15 U.S.C. § 1681*i*(a)(2), Defendants PHEAA and Performant received notification of this dispute from Equifax, Experian and TransUnion.

82.     By the time Defendants PHEAA and Performant received this credit bureau dispute, Defendants PHEAA and Performant, had already been contacted on numerous occasions by Plaintiff, advising Defendants PHEAA and Performant that its trade line on Plaintiff's Equifax, Experian and TransUnion credit reports was reflecting that Plaintiff

defaulted under the Loan Agreement and that it was causing Plaintiff problems with being approved for credit.

83.     Defendants PHEAA and Performant failed to conduct a reasonable investigation into the accuracy of information related to the disputed trade line, in violation of Section 1681$s$-2(b)(1).

84.     Notwithstanding Defendants PHEAA's and Performant's actual knowledge that Defendants Navient and PHEAA breached their duties under the Loan Agreement terms, specficially Borrower's Rights and Responsibilities Paragraphs 2, 8, & 9; continued entering a default against Plaintiff; and made false statements to Equifax, Experian and TransUnion that Plaintiff defaulted under the Loan Agreement, Defendants PHEAA's and Performant's failure to conduct a reasonable investigation of the accuracy of its reporting of this adverse information shows a reckless disregard for Plaintiff's rights under the FCRA.

85.     In addition to the violation as described above, Defendants PHEAA and Performant failed to satisfy their duties under Section 1681$s$-2(b) of updating incomplete or inaccurate information it had previously reported to Equifax, Experian and TransUnion upon receipt of each notice from Equifax, Experian and TransUnion that Plaintiff disputed the accuracy of the previously reported information.

86.     Defendants PHEAA's and Performant's failure to report that Plaintiff had not defaulted under the Loan Agreement was a failure to accurately update the information because it was "misleading in such a way and to such an extent that it [could] be expected to have an adverse effect" on Plaintiff.  *Gorman v.  Wolpoff & Abramson,*

*LLP, et al.*, 584 F.3d 1147 (9th Cir. 2009); *See also Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

87.    As a direct and proximate result of Defendants PHEAA's and Performant's willful and/or negligent refusal to comply with the FCRA as outlined above, Plaintiff has suffered substantial loss and damage including, but not limited to: economic loss due to Plaintiff's inability to apply for and obtain federally-insured student loans, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling Plaintiff to an award of actual damages in amounts to be proved at trial, plus costs of this action pursuant to 15 U.S.C. § 1681*o*.

88.    As a direct and proximate cause Defendants PHEAA's and Performant's negligent or willful failure to perform its duties under the FCRA, Plaintiff is chilled from applying to and taking college courses, necessary for Plaintiff to pursue a new career after Plaintiff's incarceration.

89.    As a direct and proximate cause Defendants PHEAA's and Performant's negligent or willful failure to perform its duties under the FCRA, Plaintiff has suffered damages, mental anguish, suffering, humiliation and embarrassment, due to Plaintiff's inability to obtain federal student loans necessary for Plaintiff to attend college; obtain new skills and degrees and use the new skills and degrees to obtain gainful, lucrative employment as required under the *State v. Andrich* terms of Plaintiff's probation in order to satisfy a Criminal Restitution Order.

90.     Defendants PHEAA's and Performant's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Defendant Navient, pursuant to 15 U.S.C. § 1681$n$(a)(2).

THEREFORE, Plaintiff requests Judgment against Defendants PHEAA and Performant, as follows:

(a)     For an Order declaring that Defendants PHEAA and Performant have violated Plaintiff's rights under the Fair Credit Reporting Act 15 U.S.C. §1681 et seq.;

(b)     For Plaintiff's actual, punitive and statutory damages, provided by 15 U.S.C. § 1681$n$(2) in an amounts to be proven at trial;

(c)     For pre-interest and post-interest (if applicable) at the highest rate allowed by law;

(d)     For attorneys' fees (should Plaintiff retain an attorney), costs and expenses as provided for by 15 U.S.C. § 1681$n$(3) & 15 U.S.C. § 1681$o$(2); and

(e)     For such other and further relief as this Court deems just and proper under the circumstances.

**COUNT THREE**
**(Defendant Performant Violated the Fair Debt Collections Practices Act 15 U.S.C. §1682 et seq. When Attempting Collection of a Debt That Does Not Exist Under the Loan Agreement )**

91.     Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

92.     On March 21, 2018, Defendant Performant attempted collecting debt from

Plaintiff that is not valid, because Plaintiff did not default under a Loan Agreement with Defendant Navient, as assigned to Defendant PHEAA.

93.     On March 21, 2018, Defendant Performant attempted collecting more funds from Plaintiff than Plaintiff owes under the Loan Agreement.

94.     On March 21, 2018, Defendant Performant attempted collecting interest, fees and expenses that are not permitted by law or under the Loan Agreement.

95.     On March 21, 2018, Defendant Performant attempted using deceptive methods to collect amounts that are not due under the Loan Agreement.

96.     On March 21, 2018, Defendant Performant made statements to credit reporting agencies concerning Plaintiff that Plaintiff defaultd under the Loan Agreement and owes amounts that are not due under the Loan Agreement.

97.     Between March 21, 2018, and the date of this First Amended Complaint, Defendant Performant made no reasonable attempts to verify either any default under the Loan Agreement, or validity of the alledge debt under the Loan Agreement.

98.     Defendant Performant's acts and omissions detailed above violate and continue to violate the Fair Debt Collections Practices Act 15 U.S.C. §1682 et seq.

THEREFORE, Plaintiff requests Judgment against Defendant Performant as follows:

(a)     For an Order declaring that Defendant Performant violated Plaintiff's rights under the Fair Debt Collections Practices Act 15 U.S.C. §1682 et seq.;

(b)     For Plaintiff's compensatory, consequential, incidental and punitive damages in an amount to be proven at trial;

(c)     For pre-interest and post-interest (if applicable) at the highest rate allowed

by law;

(d)     For attorneys' fees (should Plaintiff retain an attorney), costs and expenses; and

(e)     For such other and further relief as this Court deems just and proper under the circumstances.

**COUNT FOUR**
**(Defendant Navient Breached the Terms of a Written Loan Agreement With Plaintiff When Refusing to Communcate With Plaintiff at Permanent Addresses Plaintiff Provided to Defendant Navient And Reviewing Plaintiff's Requests for a Deferment or Forbearance Under the Terms of the Loan Agreement, Opting Instead to Declare And Enter a Default Under the Loan Agreement Against Plaintiff)**

99.     Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

100.    The Loan Agreement terms required Defendant Navient to deliver correspondence and notices to Plaintiff at the permanent address that Plaintiff updated in writing to Defendant Navient.

101.    The Loan Agreement terms require, "Upon [Plaintiff's] request, [Defendant Navient] will provide [Plaintiff] with a deferment application that explains [Plaintiff's] elligibility requirements.

102.    The Loan Agreement Agreement terms give Plaintiff a right to defer or postpone repayments to Defendant Navient, while Plaintiff is, "…experiencing an economic hardship as determined by federal law."

103.    The Loan Agreement Agreement terms require Defendant Navient to grant Plaintiff a forbearance if Plaintiff has, "a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of [Plaintiff's] total monthly gross income."

104.   Defendant Navient breached the Loan Agreement terms with Plaintiff on December 22, 2015, when refusing to communicate with or otherwise send correspondence and notices to Plaintiff at Plaintiff's updated permanent address Plaintiff identified to Defendant Navient.

105.   Defendant Navient breached the Loan Agreement terms with Plaintiff on October 21, 2016, when refusing to communicate with or otherwise send correspondence and notices to Plaintiff at Plaintiff's updated permanent address Plaintiff identified to Defendant Navient.

106.   Defendant Navient breached the Loan Agreement terms with Plaintiff when refusing to provide Plaintiff with a deferment application that explains Plaintiff's elligibility requirements at Plaintiff's permanent address provided to Plaintiff.

107.   Defendant Navient breached the Loan Agreement terms with Plaintiff when denying Plaintiff a right to defer or postpone repayments to Defendant Navient, while Plaintiff is, "…experiencing an economic hardship as determined by federal law."

108.   Defendant Navient breached the Loan Agreement terms with Plaintiff when refusing to send correspondence to Plaintiff's current mailing addresses in 2015 and 2016, informing Plaintiff about any steps Plaintiff should take to avoid or otherwise prevent Plaintiff's possible default under the Loan Agreement.

109.   Defendant Navient breached the Loan Agreement terms with Plaintiff when refusing to consider or grant Plaintiff a forbearance, despite Plaintiff having, "a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of [Plaintiff's] total monthly gross income."

110.    Defendant Navient breached the Loan Agreement terms with Plaintiff when entering a default under the Loan Agreement against Plaintiff.

111.    As a result of Defendant Navient's breaching the Loan Agreement terms with Plaintiff, Plaintiff has suffered economic losses to be proven at trial, but not less than One Hundred Ninety One Thousand Six Hundred Seven Dollars and 43/100 ($191,607.43).

THEREFORE, Plaintiff requests Judgment against Defendant Navient, as follows:

(a)    For an Order declaring that Defendant Navient, breached the written Loan Agreement with Plaintiff to service Plaintiff's federally guarateed student loans;

(b)    For Plaintiff's compensatory, consequential, incidental and economic damages in an amount to be proven at trial;

(c)    For pre-interest and post-interest (if applicable) at the highest rate allowed by law;

(d)    For attorneys' fees (should Plaintiff retain an attorney), costs and expenses; and

(e)    For such other and further relief as this Court deems just and proper under the circumstances.

**COUNT FIVE**
**(Defendant Navient Breached the Covenant of Good Faith And Fair Dealing Under a Written Loan Agreement With Plaintiff When Refusing to Both Communcate With Plaintiff at Permanent Addresses Plaintiff Provided to Defendant Navient, And Reviewing Plaintiff's Requests for a Deferment or Forbearance Under the Terms of the Loan Agreement, Opting Instead to Declare And Enter a Default Under the Loan Agreement Against Plaintiff)**

112.    Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

113.    Defendant Navient and Plaintiff were parties to a written Loan Agreement.

114.    A party to an agreement has a duty to act fairly and in good faith.  This duty is required by law and need not be in writing, because it is implied in every agreement.

115.    The Loan Agreement terms required Defendant Navient to deliver correspondence and notices to Plaintiff at the permanent address that Plaintiff updated in writing to Defendant Navient.

116.    The Loan Agreement terms require, "Upon [Plaintiff's] request, [Defendant Navient] will provide [Plaintiff] with a deferment application that explains [Plaintiff's] elligibility requirements.

117.    The Loan Agreement Agreement terms give Plaintiff a right to defer or postpone repayments to Defendant Navient, while Plaintiff is, "…experiencing an economic hardship as determined by federal law."

118.    The Loan Agreement Agreement terms require Defendant Navient to grant Plaintiff a forbearance if Plaintiff has, "a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of [Plaintiff's] total monthly gross income."

119.    Defendant Navient breached its duty of good faith and fair dealing to Plaintiff on December 22, 2015, when refusing to communicate with or otherwise send correspondence and notices to Plaintiff at Plaintiff's updated permanent address Plaintiff identified to Defendant Navient.

120.    Defendant Navient breached its duty of good faith and fair dealing to Plaintiff on October 21, 2016, when refusing to communicate with or otherwise send correspondence and notices to Plaintiff at Plaintiff's updated permanent address Plaintiff identified to Defendant Navient.

24

121.   Defendant Navient breached its duty of good faith and fair dealing to Plaintiff when refusing to provide Plaintiff with a deferment application that explains Plaintiff's elligibility requirements at Plaintiff's permanent address provided to Plaintiff.

122.   Defendant Navient breached its duty of good faith and fair dealing to Plaintiff when denying Plaintiff a right to defer or postpone repayments to Defendant Navient, while Plaintiff is, "…experiencing an economic hardship as determined by federal law."

123.   Defendant Navient breached its duty of good faith and fair dealing to Plaintiff when refusing to send correspondence to Plaintiff's current mailing addresses in 2015 and 2016, informing Plaintiff about any steps Plaintiff should take to avoid or otherwise prevent Plaintiff's possible default under the Loan Agreement.

124.   Defendant Navient breached its duty of good faith and fair dealing to Plaintiff when refusing to consider or grant Plaintiff a forbearance, despite Plaintiff having, "a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of [Plaintiff's] total monthly gross income."

125.   Defendant Navient breached its duty of good faith and fair dealing to Plaintiff when entering a default under the Loan Agreement against Plaintiff.

126.   As a result of Defendant Navient breaching its duty of good faith and fair dealing to Plaintiff, Plaintiff has suffered economic losses to be proven at trial, but not less than One Hundred Ninety One Thousand Six Hundred Seven Dollars and 43/100 ($191,607.43).

THEREFORE, Plaintiff requests Judgment against Defendant Navient, as follows:

(a)  For an Order declaring that Defendant Navient breached its duty of good faith and fair dealing to Plaintiff under the written Loan Agreement terms with Plaintiff;

(b)  For Plaintiff's compensatory, consequential, incidential and economic damages in an amount to be proven at trial;

(c)  For pre-interest and post-interest (if applicable) at the highest rate allowed by law;

(d)  For attorneys' fees (should Plaintiff retain an attorney), costs and expenses; and

(e)  For such other and further relief as this Court deems just and proper under the circumstances.

**COUNT SIX**
**(Defendant Navient Committed Negligent Misrepresentation Under a Written Loan Agreement With Plaintiff When Refusing to Both Communcate With Plaintiff at Permanent Addresses Plaintiff Provided to Defendant Navient, And Reviewing Plaintiff's Requests for a Deferment or Forbearance Under the Terms of the Loan Agreement, Opting Instead to Declare And Enter a Default Under the Loan Agreement Against Plaintiff)**

127.  Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

128.  Defendant Navient and Plaintiff were parties to a written Loan Agreement.

129.  Defendant Navient omitted or failed to disclose material information to Plaintiff that even though the Loan Agreement terms required Defendant Navient to deliver correspondence and notices to Plaintiff at the permanent address that Plaintiff updated in writing to Defendant Navient, Defendant Navient would not deliver correspondence and notices to Plaintiff at the permanent address.

130.  Defendant Navient omitted or failed to disclose material information to Plaintiff that even though the Loan Agreement terms require, "Upon [Plaintiff's] request,

[Defendant Navient] will provide [Plaintiff] with a deferment application that explains [Plaintiff's] elligibility requirements, Defendant Navient would not provide Plaintiff with a deferment application.

131.    Defendant Navient omitted or failed to disclose material information to Plaintiff that even though the Loan Agreement terms give Plaintiff a right to defer or postpone repayments to Defendant Navient, while Plaintiff is, "…experiencing an economic hardship as determined by federal law," Defendant Navient refused to defer or postpone payments to Defendant Navient, while Plaintiff experienced an economic hardship as determined by federal law.

132.    Defendant Navient omitted or failed to disclose material information to Plaintiff that even though the Loan Agreement terms require Defendant Navient to grant Plaintiff a forbearance if Plaintiff has, "a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of [Plaintiff's] total monthly gross income," Defendant Navient refused to grant Plaintiff a forbearance.

133.    Defendant Navient intended that when assuming its rights under the Loan Agreement  that Plaintiff would rely on the terms of the Loan Agreement and Defendant Navient assumed rights in the Loan Agreement for that purpose.

134.    Defendant Navient failed to exercise reasonable care or competence in communicating that it would not comply with Plaintiff's Borrower's Rights under the Loan Agreement either at the time Defendant Navient assumed its rights under the Loan Agreement, or during the term of the Loan Agreement.

135.    Plaintiff relied on the information memorialized in the Loan Agreement and

the Borrower's Rights and Responsibilities.

136.   Plaintiff's reliance upon the terms set forth by the Loan Agreement and Borrower's Rights and Responsibilities was justified.

137.   As a result of Defendant Navient's misrepresentations Plaintiff, Plaintiff has suffered economic losses to be proven at trial, but not less than One Hundred Ninety One Thousand Six Hundred Seven Dollars and 43/100 ($191,607.43).

THEREFORE, Plaintiff requests Judgment against Defendant Navient, as follows:

(a)   For an Order declaring that Defendant Navient committed a negligent misrepresentation against Plaintiff under the written Loan Agreement;

(b)   For Plaintiff's compensatory, consequential, incidental and economic damages in an amount to be proven at trial;

(c)   For pre-interest and post-interest (if applicable) at the highest rate allowed by law;

(d)   For attorneys' fees (should Plaintiff retain an attorney), costs and expenses; and

(e)   For such other and further relief as this Court deems just and proper under the circumstances.

**COUNT SEVEN**
**(Defendant Navient Committed Common Law Fraud Under a Written Loan Agreement With Plaintiff When Refusing to Both Communcate With Plaintiff at Permanent Addresses Plaintiff Provided to Defendant Navient And Reviewing Plaintiff's Requests for a Deferment or Forbearance Under the Terms of the Loan Agreement, Opting Instead to Declare And Enter a Default Under the Loan Agreement Against Plaintiff)**

138.   Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

139.   Defendant Navient and Plaintiff were parties to a written Loan Agreement.

140.    Defendant Navient, as assignee to the Loan Agreement, represented to Plaintiff that Defendant Navient would deliver correspondence and notices to Plaintiff at the permanent address Plaintiff provided and updated in writing to Defendant Navient.

141.    Defendant Navient, as assignee to the Loan Agreement, represented to Plaintiff that, "Upon [Plaintiff's] request, [Defendant Navient] will provide [Plaintiff] with a deferment application that explains [Plaintiff's] elligibility requirements."

142.    Defendant Navient, as assignee to the Loan Agreement, represented to Plaintiff that the Loan Agreement terms give Plaintiff a right to defer or postpone repayments to Defendant Navient, while Plaintiff is, "…experiencing an economic hardship as determined by federal law."

143.    Defendant Navient, as assignee to the Loan Agreement represented to Plaintiff that the Loan Agreement terms require Defendant Navient to grant Plaintiff a forbearance if Plaintiff has, "a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of [Plaintiff's] total monthly gross income."

144.    The representations from Defendant Navient, as assignee to the Loan Agreement were false, because: 1) Defendant Navient refused to send correspondence or notices to the permanent addresses that Plaintiff provided to Defendant Navient; 2) refused to provide Plaintiff with a deferment application that explained Plaintiff's elligibility requirements when requested by Plaintiff; 3) refused to defer or postpone Plaintiff's repayments to Defendant Navient under the Loan Agreement, while Plaintiff experienced an ongoing economic hardship as determined by federal law; and 4) refused to grant Plaintiff a forbearance to Plaintiff, despite Plaintiff having a monthly debt burden

29

for Title IV loans that collectively equals or exceeds 20% of Plaintiff's total monthly gross income.

145.   The representations from Defendant Navient as assignee to the Loan Agreement were material, because the Loan Agreement terms were sufficiently important to influence Plaintiff updating his then-permanent address with Defendant Navient and requesting forbearance and deferment applications due to economic hardship.

146.   Defendant Navient knew that its representations to Plaintiff under the Loan Agreement were false, because: 1) Defendant Navient refused to deliver notices and correspondence to the permanent addresses that Plaintiff provided to Defendant Navient; and 2) Defendant Navient refused to either provide Plaintff deferment and forbearance applications to Plaintiff, prior to entering a default under the Loan Agreement and declaring the Loan Agreement default to Defendant PHEAA.

147.   Defendant Navient intended that Plaintiff would act upon the Loan Agreement representations in the manner reasonably contemplated by Defendant Navient, because: 1) Plaintiff previously complied with the Loan Agreement terms when assignor, Sallie Mae, was the loan servicer; 2) Defendant Navient entered a default against Plaintiff, claiming to Defendant PHEAA that Plaintiff breached the Loan Agreement terms; and 3) Defendant Navient had an immeidate pecuniiary benefit in Plaintiff defaulting under the Loan Agreement, because Defendant PHEAA (as gurantor) would immediately pay (and immediately paid) Defendant Navient ninety seven percent (97%) Loan Agreement's outstanding balance upon Defendant Navient declaring to Defendant PHEAA that Plaintiff defaulted under the Loan Agreement.

148.   Plaintiff did not know that Defendant Navient's representations under the Loan Agreement were false, because assignor, Sallie Mae, had always complied with its duties to Plaintiff under the Loan Agreement.

149.   Plaintiff relied on the truth of the Loan Agreement representations assumed by Defendant Navient when updating Plaintiff's then-permanent address with Defendant Navient and timely requesting from Defendant Navient, deferment and forbearance applications, due to Plaintiff's economic hardship.

150.   Plaintiff's reliance upon the Defendant Navient's representations, as memorialized by terms set forth by the Loan Agreement and Borrower's Rights and Responsibilities was justified, because the assignor under the Loan Agreement, Sallie Mae, had complied with the Loan Agreement terms, during its servicing of the Loan Agreement.

151.   Plaintiff's reliance upon the Defendant Navient's representations, as memorialized by terms set forth by the Loan Agreement and Borrower's Rights and Responsibilities was also justified, because Plaintiff was aware that under the Guarantor Agreement with Defendant PHEAA, Defendant PHEAA requires Defendant Navient to fully comply with its duties under the Loan Agreement, prior to entering a default against Plaintiff.

152.   As a result of Defendant Navient defrauding Plaintiff, Plaintiff has suffered economic losses to be proven at trial, but not less than One Hundred Ninety One Thousand Six Hundred Seven Dollars and 43/100 ($191,607.43).

THEREFORE, Plaintiff requests Judgment against Defendant Navient, as follows:

(a)     For an Order declaring that Defendant Navient committed a common law fraud against Plaintiff under the written Loan Agreement;

(b)     For Plaintiff's compensatory, consequential, incidental and economic damages in an amount to be proven at trial;

(c)     For pre-interest and post-interest (if applicable) at the highest rate allowed by law;

(d)     For attorneys' fees (should Plaintiff retain an attorney), costs and expenses; and

(e)     For such other and further relief as this Court deems just and proper under the circumstances.

**COUNT EIGHT**
**(Defendant Navient Committed Defamation/False Light/Libel Against Plaintiff When Entering a Default Against Plaintiff Under the Loan Agreement And Reporting the Default to Credit Reporting Agencies And Defendant PHEAA)**

153.    Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

154.    Defendant Navient when posting the false statement that Plaintiff defaulted under a Loan Agreement with Defendant Navient to credit reporting agencies and Defendant PHEAA, made a public and patently false statement about Plaintiff.

155.    Defendant Navient made its statement about Plaintiff with actual malice, intent and reckless disregard to the statement's truth, because Defendant Navient: 1) ignored Plaintiff's correspondence to Defendant Navient, updating Plaintiff's permanent addresses, as required under the Loan Agreement; 2) ignored Plaintiff's correspondence to Defendant Navient, requesting Defendant Navient review Plaintiff's requests for student loan deferment or forbearance, due to Plaintiff's economic hardship; and 3)

illegally defaulted Plaintiff under the Loan Agreement for improper pecuniary gain, evidenced by the guarantor paying Defendant ninety seven percent (97%) of the Loan Agreement's outstanding loan balance in exchange for Defendant Navient's false statement that Plaintiff defaulted under the Loan Agreement.

156.   As a result of Defendant Navient's false statement that Plaintiff defaulted under the Loan Agreement, Plaintiff has suffered general damages from loss of his reputation in amounts to be proven at trial, but not less than Seventy Five Thousand Dollars ($75,000).

157.   As a result of Defendant Navient's false statement that Plaintiff defaulted under the Loan Agreement, Plaintiff has suffered special damages to Plaintiff's property, business, trade, profession and/or occupation in amounts to be proven at trial, but not less than Seventy Five Thousand Dollars ($75,000).

158.   As a result of Defendant Navient's false statement that Plaintiff defaulted under the Loan Agreement, Plaintiff is entitled to exemplary damages to be proven at trial, but not less than Seventy Five Thousand Dollars ($75,000).

THEREFORE, Plaintiff requests Judgment against Defendant Navient, as follows:

(a)   For an Order declaring that Defendant Navient made false, public statements that Plaintiff defaulted under the Loan Agreement;

(b)   For Plaintiff's general, special, and exemplary damages in an amount to be proven at trial;

(c)   For pre-interest and post-interest (if applicable) at the highest rate allowed by law;

(d)   For attorneys' fees (should Plaintiff retain an attorney), costs and expenses;

and

(e)     For such other and further relief as this Court deems just and proper under the circumstances.

## COUNT NINE
### (Defendant PHEAA And Its Agent Defendant Performant Committed Defamation/False Light/Libel Against Plaintiff When Reporting the Default of the Loan Agreement to Credit Reporting Agencies)

159.    Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

160.    Defendant Performant on behalf of Defendant PHEAA posting the false statement that Plaintiff defaulted under a Loan Agreement with Defendant Navient to credit reporting agencies, made a public and patently false statement about Plaintiff.

161.    Defendants PHEAA and Performant made its statements about Plaintiff with actual malice, intent and reckless disregard to the statement's truth, because Defendants PHEAA and Performant: 1) had a reasonable opportunity to review correspondence and documents exchanged between Defendant Navient and Plaintiff upon Defendant PHEAA acquisition of rights under the Loan Agreement; and 2) despite reviewing correspondence and documents exchanged between Defendant Navient and Plaintiff upon Defendant PHEAA acquisition of rights under the Loan Agreement, nevertheless falsely stated to numerous credit reporting agencies that Plaintiff had defaulted under the Loan Agreement.

162.    As a result of Defendants PHEAA's and Performant's false statements that Plaintiff defaulted under the Loan Agreement, Plaintiff has suffered general damages from loss of his reputation in amounts to be proven at trial, but not less than Seventy Five

Thousand Dollars ($75,000).

163.   As a result of Defendants PHEAA's and Performant's false statements that Plaintiff defaulted under the Loan Agreement, Plaintiff has suffered special damages to Plaintiff's property, business, trade, profession and/or occupation in amounts to be proven at trial, but not less than Seventy Five Thousand Dollars ($75,000).

164.   Defendants PHEAA's and Performant's false statements that Plaintiff defaulted under the Loan Agreement, Plaintiff is entitled to exemplary damages to be proven at trial, but not less than Seventy Five Thousand Dollars ($75,000).

THEREFORE, Plaintiff requests Judgment against Defendants PHEAA and Performant, as follows:

(a)   For an Order declaring that Defendant Navient made false, public statements that Plaintiff defaulted under the Loan Agreement;

(b)   For Plaintiff's general, special, and exemplary damages in an amount to be proven at trial;

(c)   For pre-interest and post-interest (if applicable) at the highest rate allowed by law;

(d)   For attorneys' fees (should Plaintiff retain an attorney), costs and expenses; and

(e)   For such other and further relief as this Court deems just and proper under the circumstances.

## **JURY TRIAL**

165.   Plaintiff hereby requests and demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for damages for judgment against Defendants as

follows:

a)  General damages in amounts to be proven at trial, as to the causes of action, claims and theories of relief alleged herein;

b)  Punitive damages against the individually named Defendants in amounts deemed just and reasonable as to the causes of action, claims and theories of relief alleged herein;

c)  Costs against all Defendants;

d)  Attorneys fees against all Defendants, should attorneys enter appearances on behalf of Plaintiff; and

e)  Such other and further relief which may seem just and reasonable under the circumstances.


RESPECTFULLY SUBMITTED this 9th day of November, 2018.

By: /s/: Devin Andrich
Devin Andrich
Plaintiff Pro Se

CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2018, I electronically transmitted the foregoing document to the Clerk's Office, using the CM/ECF System for filing to the following recipients:

The Honorable Douglas L. Rayes
Judge, United States District Court of Arizona
401 West Washington Street, Suite 526
Phoenix, Arizona 85003-2162

Benjamin S. Noren
Hinshaw & Culbertson LLP
800 Third Avenue, 13th Florr
New York, New York 10022
*Attorneys for Defendant Navient*

By:   /s/: Devin Andrich
            Devin Andrich