**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Devin Andrich,<br><br>Plaintiff,<br><br>v.<br><br>Navient Solutions Incorporated, et al.,<br><br>Defendants. | No. CV-18-02766-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendant Pennsylvania Higher Education Assistance Agency's Motion to Dismiss Pursuant to Rule 12(b)(6). (Doc. 55, "Mot."). Plaintiff Devin Andrich filed a Response, (Doc. 76, "Resp."), and Defendant filed a Reply, (Doc. 80, "Reply"). Oral argument was held on August 8, 2019. The Court has now considered the Motion, Response, and Reply, along with arguments and relevant case law.

**I.    BACKGROUND**

Plaintiff initiated this action on August 31, 2018. (Doc. 1). He filed a Second Amended Complaint on December 28, 2018, (Doc. 39, "SAC"), naming as defendants (1) SLM Corporation, (2) SLM Education Loan Corporation, (3) Navient Solutions, Inc., (4) Navient Solutions, LLC, (5) Pennsylvania Higher Education Assistance Agency ("PHEAA"), (6) Performant Recovery Services, Inc., and (7) DOES I-X, as individuals or entities. Defendant Performant Recovery Services, Inc. was dismissed from the action on January 22, 2019. (Doc. 53). Plaintiff refers to Defendants SLM Corporation and SLM Education Loan Corporation collectively as "Sallie Mae." (SAC ¶ 4). Plaintiff refers to

Defendants Navient Solutions, Inc. and Navient Solutions, LLC collectively as "Navient." (SAC ¶ 7). However, due to counsels' representations of entity name changes that have occurred over the time period at issue, the Court will refer to Defendants SLM Corporation and SLM Education Loan Corporation collectively as "SLM." The Court will refer to Navient Solutions, Inc. and Navient Solutions, LLC collectively as "NSL."

The following facts are assumed to be true for the purpose of deciding this Motion.[1] Plaintiff entered into a loan agreement with SLM on or about October 5, 2003 (the "Loan Agreement"). (SAC ¶ 18). SLM identified SallieMae Servicing Corporation as the loan servicer under the Loan Agreement. (SAC ¶ 31). Sometime between 2003 and 2014, NSL informed Plaintiff via writing that Plaintiff's Loan Agreement had been amended or modified to name NSL as SLM's loan servicer under Plaintiff's Loan Agreement. (SAC ¶ 33). SLM and its assignees entered into an agreement with PHEAA regarding the consolidation and servicing of Plaintiff's consolidated student loans (the "Guarantor Agreement").[2] (SAC ¶ 39). Plaintiff alleges that he is an intended third-party beneficiary under the terms of the Guarantor Agreement. (SAC ¶ 40). Plaintiff alleges that the terms of the Guarantor Agreement require SLM and its loan servicer to

- deliver notices and correspondence to the borrower's permanent address that the borrower provides to SLM and its loan servicer
- provide the borrower with deferment or forbearance applications upon the borrower's written request to Defendant SLM or its loan servicer
- review the borrower's deferment or forbearance applications, prior to Defendants SLM or its loan servicer declaring a default under the Loan Agreement with the borrower
- report to Defendant PHEAA the results of reviewing a borrower's deferment or forbearance application when declaring a default under the Loan Agreement with the borrower

(SAC ¶¶ 41–44).

On July 10, 2015, Plaintiff began serving a 3 1/2-year prison sentence at the Arizona Department of Corrections. (SAC ¶¶ 49–50). He alleges that he notified NSL of address

---

[1] This Order focuses only on the aspects of Plaintiff's allegations that relate to the counts against PHEAA.
[2] A copy of the Guarantor Agreement has not been submitted with any of the filings.

- 2 -

changes throughout his time in prison and also requested deferment or forbearance and that NSL did not respond to Plaintiff's then-address.

After Plaintiff's release from prison, he mailed a letter via United States mail to SLM and NSL updating his permanent address and requesting a student loan payment deferment or forbearance. (SAC ¶¶ 66–67). On November 1, 2017, SLM and NSL mailed a letter to Plaintiff, stating that SLM and NSL could not approve Plaintiff for a student loan payment deferment or forbearance under the Loan Agreement because SLM and NSL declared and entered Plaintiff's default under the Loan Agreement. (SAC ¶ 68). Upon SLM and NSL declaring and entering Plaintiff's default under the Loan Agreement, SLM and NSL subsequently sold or otherwise assigned its rights under the Loan Agreement to Defendant PHEAA, the guarantor of the loan. (SAC ¶¶ 30, 71). Plaintiff alleges that PHEAA made numerous false statements to several credit reporting agencies that Plaintiff defaulted under the Loan Agreement, (SAC ¶ 72), and that PHEAA would not cure SLM and NSL's breaches of the Loan Agreement. (SAC ¶¶ 85, 90).

In his Second Amended Complaint, Plaintiff brings three causes of action against PHEAA: (1) Violation of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 *et seq.* (Count Three); (2) Breach of the Loan Agreement (Count Nine); and (3) Breach of the Guarantor Agreement (Count Ten).

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if

accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

### III. ANALYSIS

#### A. FCRA Violation

"Congress enacted the [FCRA] . . . to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (internal citations and quotation marks omitted). "[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to [credit reporting agencies], called 'furnishers' in the statute." *Id.* Subsection 1681s-2(b)(1) provides that, after receiving a notice of dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–
>   (i) modify that item of information;
>   (ii) delete that item of information; or
>   (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). "These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Gorman*, 584 F.3d at 1154. On inquiry by a CRA, a furnisher must "conduct at least a reasonable, non-cursory investigation[.]" *Id.* at 1157. In order to state a claim under 15 U.S.C. § 1681s-2(b), plaintiff must

> plead the following four elements . . . against a credit furnisher: (1) a credit reporting inaccuracy existed on plaintiff's credit report; (2) plaintiff notified the consumer reporting agency that plaintiff disputed the reporting as inaccurate; (3) the consumer reporting agency notified the furnisher of the alleged inaccurate information of the dispute; and (4) the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. 1681s-2(b)(1)(A)–(E).

*Cook v. Mountain Am. Fed. Credit Union*, No. 2:18-CV-1548-HRH, 2018 WL 3707922, at *3 (D. Ariz. Aug. 3, 2018) (internal quotation marks and citations omitted). "[A]n item on a credit report can be 'incomplete or inaccurate' . . . 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Gorman*, 584 F.3d at 1163).

Plaintiff alleges that PHEAA violated 15 U.S.C. § 1681s-2(b)(1) by failing "to conduct a reasonable investigation" after being notified by Equifax, Experian, and TransUnion of Plaintiff's dispute. (SAC ¶¶ 117, 119). He also alleges that PHEAA failed

to update the incomplete or inaccurate information that had been disputed. (SAC ¶ 122). In its Motion, PHEAA argues that Plaintiff cannot state a claim under Section 1681s-2(b) because he cannot plead the first element of the cause of action—that there was an inaccuracy on his credit report. (Mot. at 6). PHEAA argues that Plaintiff alleged that he missed loan payments while in prison and "does not contend that he actually *received* a forbearance or deferment or otherwise made his payments." (Mot. at 8). In response, Plaintiff argues that "[b]ecause Defendants failed to satisfy conditions precedent to declaring a default of Plaintiff's loan agreement, no Defendant can enter or otherwise enforce a default under Plaintiff's loan agreement." (Resp. at 9).

PHEAA cites to *Fluegge v. Nationstar Mortgage, LLC*, where the court stated that plaintiff could not show that the allegedly adverse information was inaccurate. No. 12-CV-15500, 2015 WL 4430062, at *11 (E.D. Mich. July 20, 2015). That court reasoned that a mortgage remained in force even if the plaintiff could state a claim for breach of contract, and that the reports that plaintiff was in default on the Note were therefore accurate. *Id.* The same reasoning applies here. Plaintiff does not deny that the account was in default, but rather argues that he should have been granted a deferment. As pleaded, Plaintiff has not alleged that the information was "patently incorrect" or "misleading," as there is no question that the account was in default. Accordingly, Plaintiff cannot satisfy the first element of this cause of action and Count Three is dismissed as to PHEAA.

### B. Breach of the Loan Agreement

PHEAA argues that Plaintiff cannot allege that it breached the Loan Agreement simply by contending that PHEAA failed to cure SLM's and NSL's breaches of the Loan Agreement. (Mot. at 9). PHEAA further argues that nothing in the Loan Agreement required PHEAA to cure any pre-assignment breaches. (*Id.*). In response, Plaintiff does not contest PHEAA's assertion, but rather argues that he can plead breach of another written agreement which he obtained through discovery. The Court therefore dismisses Count Nine in its entirety.

### C. Breach of the Guarantor Agreement

In Count Ten, Plaintiff asserts a claim for Breach of the Guarantor Agreement. In his Response and at oral argument, Plaintiff withdrew this Count.

## IV. LEAVE TO AMEND

Before the Court ruled on this motion, Plaintiff filed a "Motion to Amend Complaint." (Doc. 108). Therefore, the Court will not grant or deny leave to amend to Plaintiff in this ruling but will instead consider Plaintiff's later filed request when fully briefed.

Accordingly,

**IT IS ORDERED granting** Defendant Pennsylvania Higher Education Assistance Agency's Motion to Dismiss Pursuant to Rule 12(b)(6), (Doc. 55), and denying Plaintiff's request to amend, pending ruling on his Motion to Amend.

Dated this 16th day of August, 2019.

Honorable Susan M. Brnovich
United States District Judge