# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Devin Andrich,<br><br>Plaintiff,<br><br>v.<br><br>Navient Solutions Incorporated, et al.,<br><br>Defendants. | No. CV-18-02766-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendant Navient Solutions, LLC's Motion to Dismiss Pursuant to Rule 12(b)(6). (Doc. 66, "Mot."). Plaintiff Devin Andrich filed a Response, (Doc. 85, "Resp."), and Defendant filed a Reply, (Doc. 83, "Reply"). Oral argument was held on August 8, 2019. The Court has now considered the Motion, Response, and Reply, along with arguments and relevant case law.

## I. BACKGROUND

Plaintiff initiated this action on August 31, 2018. (Doc. 1). He filed a Second Amended Complaint on December 28, 2018, (Doc. 39, "SAC"), naming as defendants (1) SLM Corporation, (2) SLM Education Loan Corporation, (3) Navient Solutions, Inc., (4) Navient Solutions, LLC, (5) Pennsylvania Higher Education Assistance Agency ("PHEAA"), (6) Performant Recovery Services, Inc., and (7) DOES I-X, as individuals or entities. Defendant Performant Recovery Services, Inc. was dismissed from the action on January 22, 2019. (Doc. 53). Plaintiff refers to Defendants SLM Corporation and SLM Education Loan Corporation collectively as "Sallie Mae." (SAC ¶ 4). Plaintiff refers to

Defendants Navient Solutions, Inc. and Navient Solutions, LLC collectively as "Navient." (SAC ¶ 7). However, due to counsels' representations of entity name changes that have occurred over the time period at issue, the Court will refer to Defendants SLM Corporation and SLM Education Loan Corporation collectively as "SLM." The Court will refer to Navient Solutions, Inc. and Navient Solutions, LLC collectively as "NSL."

The following facts are assumed to be true for the purpose of deciding this Motion.[1] Plaintiff entered into a loan agreement with SLM on or about October 5, 2003 (the "Loan Agreement"). (SAC ¶ 18). Plaintiff alleges that the following terms are included in the Loan Agreement:

- Plaintiff would update his permanent address with Defendant SLM or its designated assignee when Plaintiff changed permanent mailing addresses. (SAC ¶ 23).
- Plaintiff would notify SLM or its designated assignee when Plaintiff's status changed that would affect Plaintiff's Loan Agreement. (SAC ¶ 24).
- Upon request, SLM or its designated assignee would provide Plaintiff with a deferment application that explains Plaintiff's eligibility requirements to Plaintiff's permanent address. (SAC ¶ 26).
- Plaintiff had a right to defer or postpone repayments to Defendant SLM or its designated assignee, while Plaintiff experienced "an economic hardship as determined by federal law." (SAC ¶ 27).
- Defendant SLM or its designated assignee was required to grant Plaintiff a forbearance if Plaintiff had "a monthly debt burden for Title IV loans that collectively equal[ed] or exceed[ed] 20% of [Plaintiff's] total monthly gross income." (SAC ¶ 28).

SLM identified SallieMae Servicing Corporation as the loan servicer under the Loan Agreement. (SAC ¶ 31). Sometime between 2003 and 2014, NSL informed Plaintiff via writing that Plaintiff's Loan Agreement had been amended or modified to name NSL as SLM's loan servicer under Plaintiff's Loan Agreement. (SAC ¶ 33). Additionally, SLM and its assignees entered into an agreement with PHEAA regarding the consolidation and servicing of Plaintiff's consolidated student loans (the "Guarantor Agreement").[2] (SAC ¶ 39).

---

[1] This Order focuses only on the aspects of Plaintiff's allegations that relate to the counts against NSL.

[2] A copy of the Guarantor Agreement has not been submitted with any of the filings.

Between 2003 and 2014, Plaintiff notified SLM and NSL of a change in Plaintiff's permanent address approximately three times by notifying SLM and NSL via the mailing address previously provided—P.O. Box 9500, Wilkes-Barre, Pennsylvania 18773-9500 (the "Mailing Address"). (SAC ¶¶ 32, 35). Each time after Plaintiff corresponded, SLM and NSL subsequently caused delivery of forms and correspondence to Plaintiff at Plaintiff's new permanent address. (SAC ¶ 36). Each time between 2003 and 2014 that Plaintiff requested deferment and forbearance forms from SLM and NSL via the Mailing Address, SLM and NSL subsequently caused delivery of deferment and forbearance forms to Plaintiff at Plaintiff's new permanent address.[3] (SAC ¶ 37).

On July 10, 2015, Plaintiff began serving a 3 1/2-year prison sentence at the Arizona Department of Corrections. (SAC ¶¶ 49, 50). On December 22, 2015, Plaintiff mailed a letter to NSL via the Mailing Address informing NSL of Plaintiff's then-permanent address in Tucson, Arizona and enclosing a form created by NSL that borrowers can use when requesting a student loan payment deferment or forbearance. (SAC ¶¶ 52–54). Plaintiff again mailed a letter to NSL via the Mailing Address on October 21, 2016, informing NSL of Plaintiff's then-permanent address and requesting the status of Plaintiff's student loan payment deferment or forbearance application previously submitted, or alternatively, requesting a student loan payment deferment or forbearance. (SAC ¶¶ 57–59). Between December 22, 2015, and the date of the First Amended Complaint, NSL neither responded to Plaintiff's December 22, 2015 or October 21, 2016 correspondence, nor mailed any correspondence to Plaintiff's then-permanent addresses warning Plaintiff of a pending or possible default under the Loan Agreement. (SAC ¶¶ 56, 61).

After Plaintiff's release from prison, he mailed a letter to SLM and NSL at the Mailing Address on October 1, 2017 updating his permanent address and requesting a student loan payment deferment or forbearance. (SAC ¶¶ 66, 67). On November 1, 2017, SLM and NSL mailed a letter to Plaintiff stating that SLM and NSL could not approve

---

[3] Plaintiff does not allege how many times he requested deferment and forbearance forms from SLM and NSL between 2003 and 2014.

Plaintiff for a student loan payment deferment or forbearance under the Loan Agreement because SLM and NSL declared and entered Plaintiff's default under the Loan Agreement. (SAC ¶ 68). Upon SLM and NSL declaring and entering Plaintiff's default under the Loan Agreement, SLM and NSL subsequently sold or otherwise assigned their rights under the Loan Agreement to Defendant PHEAA, the guarantor of the Loan. (SAC ¶ 71). Plaintiff alleges that SLM and NSL made numerous false statements to PHEAA that Plaintiff defaulted under the Loan Agreement. (SAC ¶ 69). Plaintiff also alleges that SLM and NSL made numerous false statements to several credit reporting agencies that Plaintiff defaulted under the Loan Agreement. (SAC ¶ 70).

In his Second Amended Complaint, Plaintiff brings eight causes of action against NSL:

- Count One – violation of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 et seq., for making false statements to PHEAA;
- Count Two – defamation;
- Count Three – violation of the FCRA for making false statements to Credit Reporting Agencies;
- Count Five – breach of the Loan Agreement;
- Count Six – breach of the covenant of good faith and fair dealing;
- Count Seven – negligent misrepresentation;
- Count Eight – fraud;
- Count Ten – breach of the "Guarantor Agreement."

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if

accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," as "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 555 n.3 (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1202, at 94–95 (3d ed. 2004)). Thus, Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III. ANALYSIS

### A. FCRA

Plaintiff brings claims against NSL under the FCRA in Counts One and Three. In Count One, Plaintiff alleges that NSL violated the FCRA when making false statements to PHEAA. In Count Three, Plaintiff alleges that NSL violated the FCRA when making false statements to credit reporting agencies.

"Congress enacted the [FCRA] to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (internal citations and quotation marks omitted). "[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to [credit reporting agencies], called 'furnishers' in the statute." *Id.* Under Counts One and Three, Plaintiff asserts NSL violated 15 U.S.C. § 1681s-2(b)(1): "Duties of furnishers of information upon notice of dispute." Subsection 1681s-2(b)(1) provides that after receiving a notice of dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–
>     (i) modify that item of information;
>     (ii) delete that item of information; or
>     (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). "These duties arise only after the furnisher receives notice of dispute from a [credit reporting agency]; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Gorman*, 584 F.3d at

1154. On inquiry by a credit reporting agency ("CRA"), a furnisher must "conduct at least a reasonable, non-cursory investigation[.]"[4] *Id.* at 1157. In order to state a claim under 15 U.S.C. § 1681s-2(b), plaintiff must

> plead the following four elements . . . against a credit furnisher: (1) a credit reporting inaccuracy existed on plaintiff's credit report; (2) plaintiff notified the consumer reporting agency that plaintiff disputed the reporting as inaccurate; (3) the consumer reporting agency notified the furnisher of the alleged inaccurate information of the dispute; and (4) the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. 1681s-2(b)(1)(A)–(E).

*Cook v. Mountain Am. Fed. Credit Union*, No. 2:18-CV-1548-HRH, 2018 WL 3707922, at *3 (D. Ariz. Aug. 3, 2018) (internal quotation marks and citations omitted). "[A]n item on a credit report can be 'incomplete or inaccurate' . . . 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Gorman*, 584 F.3d at 1163).

### 1. *Count One – Statements to PHEAA*

In Count One, Plaintiff alleges that NSL violated the FCRA when making false statements to PHEAA. NSL argues that the FRCA "only provides consumers with a private right of action against a furnisher, like NSL, for violations of Section 1681s-2(b), which relates to furnishing information to a CRA", and because "PHEAA is not a CRA, Count [One] must be dismissed." (Mot. at 6). NSL relies on *Harris v. Pennsylvania Higher Education Assistance Agency*, 696 Fed. App'x 87, 90 (3d Cir. 2017), which held that "the District Court properly dismissed [Plaintiff's] amended complaint . . . because PHEAA is not a 'consumer reporting agency' under the FCRA." In order for NSL to be in violation of Section 1681s-2 as it relates to furnishing information to PHEAA, PHEAA would need to be considered a CRA under the FCRA.

---

[4] A consumer reporting agency "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties[.]" 15 U.S.C. § 1681a(f).

- 7 -

While Plaintiff does allege that he notified PHEAA regarding the accuracy of the information provided by NSL to PHEAA (SAC ¶ 80), and that NSL failed to conduct a reasonable investigation, (SAC ¶ 95), he only provides a conclusory allegation that PHEAA is a CRA as defined under 15 U.S.C. §1681a(f). (SAC ¶ 10). In concluding that PHEAA was not a CRA under the FCRA, the Third Circuit noted that "[t]he three major consumer credit reporting agencies are TransUnion, Experian, and Equifax." *Harris*, 696 F. App'x at 90, n.1. Plaintiff does not contest NSL's argument that PHEAA is not a CRA, but rather asserts that "[t]o the exten[t] that Defendant PHEAA is not a credit reporting agency, then Plaintiff can cure the pleading defect in the Third Amended Complaint." (Resp. at 8). It is unclear how Plaintiff intends to cure this deficiency. Accordingly, Count One is dismissed as it relates to NSL.

### 2. *Count Three – Statements to Credit Reporting Agencies*

In Count Three, Plaintiff alleges that NSL violated the FCRA when making false statements to credit reporting agencies. NSL argues that Plaintiff cannot state a claim under Section 1681s-2(b) for two reasons. First, NSL argues that Plaintiff cannot plead that "he found an inaccuracy in his credit reporting," which is the first element required in order to state a claim. (Mot. at 7). NSL asserts that "[s]imply seeking forbearance or deferment did not excuse Plaintiff from making his monthly payments, or prevent NSL from determining [Plaintiff] was in default if he did not qualify for such forbearance or deferment." (*Id.*). NSL further asserts that Plaintiff admits that he did not actually receive a forbearance or deferment. (Mot. at 8). In response, Plaintiff argues that NSL knew the information was inaccurate because it had deliberately withheld requested forbearance applications from Plaintiff. (Resp. at 9).

NSL cites to *Fluegge v. Nationstar Mortgage, LLC*, No. 12-CV-15500, 2015 WL 4430062, at *11 (E.D. Mich. July 20, 2015), where the court stated that plaintiff could not show that the allegedly adverse information was inaccurate. That court reasoned that a mortgage remained in force even if the plaintiff could state a claim for breach of contract, and that the reports that plaintiff was in default on the Note were therefore accurate. *Id.*

The same reasoning applies here. Plaintiff does not deny that the account was in default, but rather argues that he should have been granted a deferment. As pleaded, Plaintiff has not alleged that the information was "patently incorrect" or "misleading," as there is no question that the account was in default. Accordingly, Plaintiff cannot satisfy the first element of this cause of action.

Even if Plaintiff could satisfy the first element, NSL argues that Plaintiff's allegation regarding NSL's failure to conduct a reasonable investigation is "conclusory," "too vague to raise the right to relief above the speculative level," and fails "to describe with particularity the reasons why the investigation was unreasonable." (Mot. at 8). Plaintiff makes the following relevant allegations:

- [NSL] informed Equifax, Experian and TransUnion that Plaintiff defaulted under the Loan Agreement . . .
- On November 7, 2018, Plaintiff contacted Equifax, Experian and TransUnion to dispute the accuracy of the information [NSL] reported about Plaintiff.
- Upon information and belief, [NSL] received notification of Plaintiff's dispute from Equifax, Experian and TransUnion no later than November 18, 2018.
- [NSL] failed to conduct a reasonable investigation into the accuracy of information related to the disputed trade line, in violation of Section 1681$s$-2(b)(1).
- [NSL] continued entering a default against Plaintiff; and made false statements to Equifax, Experian and TransUnion that Plaintiff defaulted under the Loan Agreement.
- [NSL] failed to satisfy their duties under Section 1681s-2(b) of updating incomplete or inaccurate information it had previously reported to Equifax, Experian and TransUnion upon receipt of each notice from Equifax, Experian and TransUnion that Plaintiff disputed the accuracy of the previously reported information.

(SAC ¶¶ 114, 116, 117, 119, 120, 122). Plaintiff has done no more than plead the elements of the cause of action. Even if these allegations were sufficient, Plaintiff has not pled "that a credit reporting inaccuracy existed on plaintiff's credit report." Accordingly, Count Three is dismissed as it relates to NSL.

**B. Defamation/False Light**

In Count Two, Plaintiff asserts claims of "Defamation/False Light/Libel Against Plaintiff When Declaring a Default of Plaintiff's Loan Agreement to Defendant PHEAA – Assuming That Defendant PHEAA Is Not a Consumer Reporting Agency." (SAC at 21). Under Arizona law, there are three elements of a defamation claim: "(1) defendant made a false defamatory statement about plaintiff, (2) defendant published the statement to a third party, and (3) defendant knew the statement was false, acted in reckless disregard of whether the statement was true or false, or negligently failed to ascertain the truth or falsity of the statement." *Farrell v. Hitchin' Post Trailer Ranch*, No. 1 CA-CV 11-0011, 2011 WL 6057930, at *2 (Ariz. Ct. App. Dec. 6, 2011) (citing *Peagler v. Phoenix Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977)). "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989). While the distinction between defamation and false light invasion of privacy is subtle, they are recognized as separate torts in Arizona. *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 449–50 (Ariz. Ct. App. 2015). "To establish a claim for false light invasion of privacy, a plaintiff must show (1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Id.* at 450; *see also Fedoseev v. Alexandrovich*, No. CV-05-536-TUC-DCB, 2006 WL 964281, at *5 (D. Ariz. Apr. 11, 2006) ("To succeed on a claim for false light invasion of privacy, a plaintiff must show: (1) the defendant knowingly or recklessly; (2) gave publicity to: (3) false information or innuendo about the plaintiff; (4) that a reasonable person would find highly offensive." (citing *Hart v. Seven Resorts, Inc.*, 947 P.2d 846, 854 (Ariz. Ct. App. 1997)).

NSL argues that "[t]o the extent the alleged statement(s) included Plaintiff's default on the Loan, such a statement cannot form the basis of a defamation claim – it was true." (Mot. at 9). As stated above, Plaintiff does not dispute that the account was in default, but

rather argues that such default was improper due to his requests for deferment or forbearance. Accordingly, Plaintiff has not pled that a "false publication" or "false information" was published, and Count Two is dismissed as it relates to NSL.

### C. Breach of the Loan Agreement

NSL argues that Plaintiff's breach of contract claim fails because NSL only ever serviced the Loan and "because Plaintiff cannot show that NSL was a party to the Loan or any other contract with Plaintiff." (Mot. at 10). NSL further asserts that the Promissory Note shows that the lender is "SLM Education Loan Corp." and that Plaintiff concedes that he entered the loan with SLM. (Mot. at 10–11). NSL argues that "[c]ourts have consistently held that loan servicers are not liable to borrowers for breach of contract absent a separate contract with borrower." (Mot. at 11).

Here, neither party disputes that NSL serviced the loan. Plaintiff alleges that NSL informed him that it became the loan servicer. (SAC ¶ 33). And although Plaintiff alleges that "[SLM] either notified Plaintiff that [SLM] sold or otherwise assigned the Loan Agreement to Defendant [NSL], or alternatively, that Defendant [SLM] assigned its loan servicing duties under the Loan Agreement to Defendant [NSL]," (SAC ¶ 45), Plaintiff's statements are conclusory and the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 990 (9th Cir.) (citation omitted). The Loan Agreement, which is incorporated by reference in the SAC, is between SLM and Plaintiff. And Plaintiff has not provided any plausible allegations indicating that SLM sold the loan to NSL. Mere loan servicers are not often found to be in privity with borrowers. *See, e.g.*, *Mazzei v. Money Store*, 308 F.R.D. 92, 109 (S.D.N.Y. 2015), *aff'd*, 829 F.3d 260 (2d Cir. 2016) ("A number of courts have addressed whether servicers that are nonsignatories to mortgage loan agreements may be held liable by the mortgagor in a breach of contract action. A significant majority of courts have concluded that loan servicers are not in privity of contract with mortgagors where the servicers did not sign a contract with the mortgagors or expressly assume liability.") (collecting cases); *Conder v. Home Sav. of Am.*, 680 F.

Supp. 2d 1168, 1174 (C.D. Cal. 2010) ("The fact that Aurora entered into a contract with HSA to service Plaintiff's loan does not create contractual privity between Aurora and Plaintiff."); c*f. Modderno v. Ocwen Loan Servicing*, LLC, No. 1:17-CV-77 (JCC/TCB), 2017 WL 1234287, at *3 (E.D. Va. Apr. 4, 2017), *aff'd sub nom. Modderno v. Sur. Trustees*, *LLC*, 699 F. App'x 183 (4th Cir. 2017) ("Loan servicers are regularly found to be in privity with the lender on whose behalf they are servicing the loan, placing Ocwen (the servicer) in privity with RFC (the lender).").

Accordingly, Plaintiff's breach of contract claim against NSL is dismissed.

### D. Breach of the Covenant of Good Faith and Fair Dealing

"Arizona 'law implies a covenant of good faith and fair dealing in every contract.'" *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986)). "[I]mplied terms are as much of a contract as are the express terms." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002). "The purpose of such terms is so 'neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.'" *Bike Fashion Corp.*, 46 P.3d at 434 (quoting *Rawlings*, 726 P.2d at 569–70). "Arizona law recognizes that a party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Id.* at 435.

NSL argues first that Count Six, Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing claim, fails because there is no agreement between NSL and Plaintiff. As stated above, Plaintiff has failed to state a claim for breach of contract.

But even if the breach of contract claim remained, NSL argues that Count Six fails because "it is duplicative of his breach of contract claim" and alleges only breach of express terms in the contract. (Mot. at 14). NSL cites to *Aspect Systems, Inc. v. Lam Research Corp.*, No. 06-1620-PHX-NVW, 2006 WL 2683642, at *2 (D. Ariz. Sept. 16, 2006), where

the court held that the plaintiff's breach of the covenant of good faith and fair dealing claim failed because plaintiff had "not explained how Defendants ha[d] breached the implied covenant other than through the breach of an express contractual term." And here Plaintiff also alleges breach of terms he deems express. *See, e.g.*, SAC ¶¶ 152, 153, 154, 155. Nowhere in the Complaint does he allege, or alternatively allege, that the breaches stem from "implied" terms of the contract. Accordingly, Count Six is dismissed as it relates to NSL.

### E. Negligent Misrepresentation and Fraud

NSL argues that Plaintiff's Negligent Misrepresentation (Count Seven) and Fraud (Count Eight) claims fail because, among other reasons, they are duplicative of Plaintiff's breach of contract claim. Plaintiff fails to address NSL's arguments in his Response.

In Counts Seven and Eight, Plaintiff does not allege conduct separate from the alleged breach of contract. *See Ireland Miller, Inc. v. Shee Atika Holdings Phx.*, LLC, No. CV-10-00354-PHX-ROS, 2010 WL 2743653, at *3 (D. Ariz. July 12, 2010) (dismissing claims in negligence as "duplicative of the breach of contract claim" and noting that "claiming that Seller breached a duty set forth in the parties' agreement merely is another attempt to plead a breach of contract claim (i.e., if the agreement required disclosure and Defendants failed to do so, that is a breach of the agreement)"). Plaintiff only alleges the same conduct as he alleges in his breach of contract claim—that NSL failed to perform under the Loan Agreement by not updating his address, not providing him a deferment application, and not granting him a deferment or forbearance.

But in absence of a valid breach of contract claim (see section III.C above), these claims still fail. Both negligent misrepresentation and fraud causes of action require the defendant to have provided a false representation or false information to the plaintiff.[5]

---

[5] "The elements of negligent misrepresentation are: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014). "An actionable fraud claim requires the concurrence of nine elements: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of

Since Plaintiff's allegations concern the Loan Agreement, the alleged representations were made by the lender SLM, not the servicer NSL. Counts Seven and Eight are dismissed.

### F. Breach of the "Guarantor Agreement"

In Count Ten, Plaintiff asserts a claim for Breach of the Guarantor Agreement. In his Response and at oral argument, Plaintiff withdrew this Count.

## IV. LEAVE TO AMEND

Before the Court ruled on this motion, Plaintiff filed a "Motion to Amend Complaint." (Doc. 108). Therefore, the Court will not grant or deny leave to amend to Plaintiff in this ruling but will instead consider Plaintiff's later filed request when fully ripe for ruling.

Accordingly,

**IT IS ORDERED granting** Defendant Navient Solutions, LLC's Motion to Dismiss (Doc. 66), and denying Plaintiff's request to amend, pending ruling on his Motion to Amend.

Dated this 3rd day of September, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge

---

its truth, (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury." *Simes v. Sparkman*, No. 1 CA-CV 18-0413, 2019 WL 1410635, at *2 (Ariz. Ct. App. Mar. 28, 2019) (citing *Nielson v. Flashberg*, 419 P.2d 514, 517–18 (1966)).