**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Devin Andrich, | No. CV-18-02766-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Navient Solutions Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's Motion to Amend Complaint. (Doc. 108, "Mot.")[1] Defendants Navient Solutions LLC, Navient Education Loan Corporation and Sallie Mae Bank responded to Plaintiff's Motion and filed a supporting declaration.[2] (Doc. 117, "Navient Resp."; Doc. 118, "Noren Decl.") Fellow Defendant Pennsylvania Higher Education Assistance Agency separately responded. (Doc. 119, "PHEAA Resp.") Plaintiff replied to each defendant separately. (Doc. 120, "Reply to Navient"; Doc. 125, "Reply to PHEAA".) No oral argument was requested. The Court considers the pleadings and enters the following Order:

## I.     BACKGROUND

Plaintiff Devin Andrich seeks to file this complaint for a fifth time[3] since August of 2018.

### a.    Factual Background

---

[1] Plaintiff's Fourth Amended Complaint, ("4AC"), is attached as Exhibit A. (Doc. 108-1.)
[2] For purposes of this Order, the three parties jointly opposing Plaintiff's latest amendments in Doc. 117 are referred to collectively as "Navient."
[3] This tally includes the Complaint, (Doc. 1), as originally filed.

Although the facts alleged and parties identified by the successive versions of Plaintiff's Complaint vary slightly, the central thrust of the allegations is as follows.[4] Plaintiff claims he entered into a loan agreement with SLM Corporation and SLM Education Loan Corporation, (collectively, "SLM")[5] on or about October 5, 2003. (4AC ⁋ 20.) Navient Solutions, LLC, ("NSL"), informed Plaintiff via writing that Plaintiff's Loan Agreement had been amended or modified to name NSL as SLM's loan servicer under Plaintiff's Loan Agreement. (4AC ¶ 42).

Between 2003 and 2014, Plaintiff notified SLM and NSL of a change in Plaintiff's permanent address three times by notifying SLM and NSL via the mailing address previously provided—P.O. Box 9500, Wilkes-Barre, Pennsylvania 18773-9500 (the "Mailing Address"). (4AC ¶¶ 41, 44). Each time after Plaintiff corresponded, SLM and NSL subsequently caused delivery of forms and correspondence to Plaintiff at Plaintiff's new permanent address. (4AC ¶ 45). Each time between 2003 and 2014 that Plaintiff requested deferment and forbearance forms from SLM and NSL via the Mailing Address, SLM and NSL subsequently caused delivery of deferment and forbearance forms to Plaintiff at Plaintiff's new permanent address.[6] (4AC ¶ 46).

On July 10, 2015, Plaintiff began serving a 3 1/2-year prison sentence at the Arizona Department of Corrections for committing multiple felony counts of fraud, theft, and forgery. (4AC ¶¶ 55, 58; Doc. 119-2 at 2.) On December 22, 2015, Plaintiff mailed a letter to NSL via the Mailing Address informing NSL of Plaintiff's then-permanent address in Tucson, Arizona and enclosing a form created by NSL that borrowers can use when

---

[4] This Court's prior orders dismissing Plaintiff's Second Amended Complaint as to Navient, (Doc. 123), and PHEAA, (Doc. 116) examine the factual allegations in greater detail.

[5] Plaintiff's Complaint refers to SLM Corporation and SLM Education Loan Corporation collectively, as "SLM." For purposes of simplicity, this Order generally follows suit unless identification of the specific entity invoked—i.e., SLM Corporation *or* SLM Education Loan Corporation—is necessary. Sallie Mae Bank ("SMB") notes that it is improperly named in the Second Amended Complaint as "SLM Corporation" and that "SLM Education Loan Corporation" changed its name to Navient Education Loan Corporation, ("NELC"), in 2014. (Doc. 117 at 1.)

[6] Plaintiff does not allege how many times he requested deferment and forbearance forms from SLM and NSL between 2003 and 2014.

requesting a student loan payment deferment or forbearance. (4AC ¶¶ 70, 76). Plaintiff again mailed a letter to NSL at the Mailing Address on October 21, 2016, informing NSL of Plaintiff's then-permanent address and requesting the status of Plaintiff's student loan payment deferment or forbearance application previously submitted, or alternatively, requesting a student loan payment deferment or forbearance. (SAC ¶¶ 57–59). Between December 22, 2015, and the date of the First Amended Complaint, NSL neither responded to Plaintiff's December 22, 2015 or October 21, 2016 correspondence, nor mailed any correspondence to Plaintiff's then-permanent addresses warning Plaintiff of a pending or possible default under the Loan Agreement. (SAC ¶¶ 56, 61).

After Plaintiff's release from prison, he mailed a letter to SLM and NSL at the Mailing Address on October 1, 2017 updating his permanent address and requesting a student loan payment deferment or forbearance. (SAC ¶¶ 66, 67). On November 1, 2017, SLM and NSL mailed a letter to Plaintiff stating that SLM and NSL could not approve Plaintiff for a student loan payment deferment or forbearance under the Loan Agreement because SLM and NSL declared and entered Plaintiff's default under the Loan Agreement. (SAC ¶ 68). Upon SLM and NSL declaring and entering Plaintiff's default under the Loan Agreement, SLM and NSL subsequently sold or otherwise assigned their rights under the Loan Agreement to Defendant PHEAA, the guarantor of the Loan. (SAC ¶ 71). Plaintiff alleged that SLM and NSL made numerous false statements to PHEAA that Plaintiff defaulted under the Loan Agreement. (SAC ¶ 69). Plaintiff also alleged that SLM and NSL made numerous false statements to several credit reporting agencies that Plaintiff defaulted under the Loan Agreement. (SAC ¶ 70).

### b. Procedural Background

Plaintiff initiated this action on August 31, 2018 bringing claims against three named entities and one individual: PHEAA, Performant Recovery Services, Inc., Navient Solutions, Inc. and Sara Evans. Plaintiff claimed violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, against Defendants Navient and PHEAA and violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1682 *et seq.*,

against Performant and Evans. This original complaint was deficient, however, as it failed to allege that Plaintiff had submitted disputes to the relevant credit reporting agencies. (*See* Doc. 18.) Plaintiff amended this first complaint through stipulation, (Doc. 15), on November 9, 2018. (Doc. 18.) The First Amended Complaint, too, required amendment as its defamation claim was preempted and FCRA claim premature. (*See id.*) Plaintiff filed Second Amended Complaint on December 28, 2018. (Doc. 29.) Both Navient, (Doc. 66), PHEAA, (Doc. 55), and SLM and SLM Education Loan Corporation, (Doc. 97) moved to dismiss that latest incarnation. With those motions under advisement, Plaintiff filed a Third Amended Complaint without the Court's leave. (Docs. 91-92.) The Court struck that complaint, (Doc. 113), and proceeded to oral argument on Defendants' motions to dismiss, scheduled for August 8, 2019. The day of oral argument, however, came approximately eleven hours too late. The night before oral argument commenced, Plaintiff filed the instant motion to amend. (Doc. 108.) The Court subsequently dismissed the Second Amended Complaint's claims against PHEAA on August 16, 2019 and Navient on September 3, 2019,[7] but left judgment on Plaintiff's late request for leave to amend unresolved, pending full briefing. (*See* Doc. 116 (as to PHEAA); Doc. 123 (as to Navient).)

### i. Fourth Amended Complaint

In his Fourth Amended Complaint, Plaintiff brings ten claims. Largely, the Fourth Amended Complaint tracks the claims in the Second Amended Complaint (discussed previously) but focus in on Defendants' breach of specific paragraphs of the Loan Agreement.

The first three counts are distinct claims of "Defamation/False Light/Libel" against Defendants SML, Navient, and Bank of NY ELT SLMA Trusts. Count One pertains to reporting Plaintiff's default under the Loan Agreement to PHEAA, Count Two for knowingly reporting an incorrect permanent address to PHEAA, and Count Three for reporting Plaintiff's default to the National Student Loan Data System ("NSLDS"). (4AC

---

[7] The Court granted both Navient's and PHEAA's motions to dismiss, (Docs. 116, 123), but stayed the outstanding responsive motions to SLM and SLM Education Loan Corporation's motion to dismiss pending the outcome of the instant motion to amend. (*See* Doc. 115.)

at 40.) Count Four alleges a claim common to each incarnation of the complaint: a FCRA violation—against SML, Navient, Bank of NY ELT SLMA Trusts, and PHEAA—for reporting Plaintiff's default to credit reporting agencies. (4AC at 43-44.) Counts 5-10 repeat allegations familiar to previous versions of the complaint, but now focus on breaches of various paragraphs of a section of the Loan Agreement entitled "Borrower's Rights and Responsibilities." Count Five details SLM and Navient's breach of Paragraphs 2, 8, 9. (4AC at 51-52.) Count Six alleges a breach of the Covenant of Good Faith and Fair Dealing against SLM and Navient. Count Seven alleges Negligent Misrepresentation under the Loan Agreement as to SLM and Navient. (4AC at 59.) Count Eight alleges Common Law Fraud against SLM and Navient. (4AC at 62.) Count Nine alleges PHEAA breached the "Borrower's Rights and Responsibilities" Paragraph 5. (4AC at 67-68.) Count Ten alleges Navient violation of the "Good Samaritan Doctrine and Increasing Risk of Economic Harm to Plaintiff." Count Eleven alleges negligent misrepresentation by PHEAA. (4AC at 75.) Finally, Count Twelve alleges contract interference against all Defendants for preventing Plaintiff from fulfilling the terms of his release conditions and probation. (4AC at 78-83.)

## II.     LEGAL STANDARD

"After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). "Generally, Rule 15 advises the court that leave shall be freely given when justice so requires." *Id.* (quotation marks omitted). "The power to grant leave to amend . . . is entrusted to the discretion of the district court, which determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility."[8]  *Weber v. Allergan Inc.*, No. CV-12-

---

[8] As portions of Plaintiff's proposed amendments relate to events that occurred after Plaintiff filed his initial complaint, the Fourth Amended Complaint could properly be considered a supplemental filing under Rule 15(d). (Doc. 117 at 3.) But, as Defendants correctly identify, Plaintiff's new amendments allege conduct that occurred both *before* and *after* Plaintiff filed his complaint, thus also invoking Rule 15(a). *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1504 (3d ed. 2019) (dissecting the differences between amended pleadings under Rule 15(a) and supplemental pleadings under Rule 15(d)). Although Plaintiff is a former attorney, the

02388-PHX-SRB, 2016 WL 8114210, at *2 (D. Ariz. Feb. 17, 2016) (quotation marks omitted) (citing *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010)); *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) ("A trial court may deny [a motion for leave to amend] if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit."). "[L]eave to amend should be denied as futile 'only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)). Granting a motion to amend is a matter of the court's discretion, *Skinner v. Ryan*, No. CV-12-1729-PHX-SMM (LOA), 2013 WL 3967619, at *1 (D. Ariz. Aug. 2, 2013), and discretion "is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint." *Id.* (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 n.3 (9th Cir. 1987)); *see also Ascon Prop., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended the complaint.").

### III.   DISCUSSION

#### a.  Rule 15 Factors Justify Denying Plaintiff's Motion to Amend

To determine the propriety of granting Plaintiff's requested amendment, the Court examines four factors: bad faith,[9] undue delay, prejudice to the opposing party, and futility.

---

Court notes his pro se status in construing the proposed Fourth Amended Complaint as an amended pleading under Rule 15(a). *See U.S. for Use of Atkins v. Reiten*, 313 F.2d 673, 675 (9th Cir. 1963) (emphasizing a court's discretion in considering leave to amend); *see also Athena Feminine Techs., Inc. v. Wilkes*, No. C 10-4868 SBA, 2013 WL 450147, at *2 (N.D. Cal. Feb. 6, 2013) ("stating that "[t]he legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as the standard for granting or denying a motion under Rule 15(a)"); *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996) (holding that "[a]lthough these are cases under Fed. R. Civ. P. 15(a) and not Rule 15(d). . . the standard is the same").

[9] The Court avers from making a bad faith finding but notes that such an inference is possible. Plaintiff's actions, at times, were unaccompanied by good faith efforts to inform Defendants of actions likely to prejudice Defendants. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373-74 (9th Cir. 1990) ("[W]e need not apply all five factors here because the final two plainly reveal that the district court did not abuse its discretion in dismissing [the plaintiff's] action with prejudice.").

*Weber*, 2016 WL 8114210, at \*2.  The Court has also kept in mind that although Plaintiff is proceeding pro-se, he has practiced law and is not entitled to as much leniency as an untrained pro-se litigant.

### i.  Futility

The Court previously granted Plaintiff leave to amend his initial Complaint on three separate occasions. Plaintiff's previous attempts at amendment all failed. The instant attempt, Plaintiff's fourth, is also likely to fail. Thus, this factor weighs in favor of denying Plaintiff's motion. *Williams v. California*, 764 F.3d 1002, 1018-19 (9th Cir. 2014) ("The fact that Plaintiffs have already had two chances to articulate clear and lucid theories underlying their claims, and they failed to do so, demonstrates that amendment would be futile."). As explained below, the Court sees little need to prolong litigation by permitting further amendment. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038-39 (9th Cir. 2002).

### 1.  Proposed Amendments as to PHEAA[10]

Before diving headlong into analysis of Plaintiff's amendments as they concern PHEAA, it is worth noting that Plaintiff offers little in the way of new facts to support his amendments. Plaintiff takes issue with this characterization and instead argues that PHEAA's material breach of Paragraph 6 of the Loan Agreement[11] occurred on July 30, 2019, with Plaintiff receiving notice of the breach on August 2, 2019. (Doc. 125 at 4.) This conclusion, however, is premised on a mistaken reading of both the Loan Agreement and PHEAA's letter that allegedly effectuated the breach. First, Plaintiff points to a PHEAA notice in its discovery disclosures that allows a debtor's to object in writing to "*the [c]ollection of debt*." (Doc. 125 at 4 (emphasis added).) But the section grants Plaintiff the right to object to the collection of his student loans, not to the notice. The Court agrees with

---

[10] Analysis in this section primarily concerns arguments raised by Defendant PHEAA in its separately filed response, (Doc. 119).
[11] The Court can consider the Loan Agreement, attached as an exhibit to Navient's motion to dismiss, without converting the motion into a motion for summary judgment "because the complaint refers to the Agreement, it is central to one of the plaintiff's breach of contract claims, and no party questions the authenticity of the document." *BioD, LLC v. Amnio Tech.*, No 2:13-cv-1670-HRH, 2014 WL 11515617, at \*2 n.11 (D. Ariz. Jul. 22, 2014).

1  PHEAA that Plaintiff's reliance on his July 2019 correspondence with PHEAA does

2  nothing to change the fact that Plaintiff was aware of PHEAA's credit reporting

3  requirement in his loan agreement, and that such a report had been made at the time he

4  initiated the instant suit. (*See* Doc. 119 at 7 n.4.)

### a. Count 3: Defamation as to PHEAA[12]

6  Plaintiff contends that PHEAA made "public and patently false statements" by

7  reporting his default under the Loan Agreement. (4AC ⁋ 172.) To assert a defamation claim

8  under Arizona law a plaintiff must show: "(1) that the defendant has made a false statement,

9  (2) that the statement was published or communicated to someone other than the plaintiff,

10  and (3) that the statement tends to harm the plaintiff's reputation." *Prostollo v. Scottsdale*

11  *Healthcare Hosp.*, No. CV-17-0409-PHX-DJH, 2018 WL 501414, at *4 (D. Ariz. Jan. 12,

12  2018). Plaintiff fails to clear the first hurdle. As this Court previously established, "there is

13  no question that [Plaintiff's] account was in default," notwithstanding any forbearance or

14  deferment requests made to Navient. (Doc. 116 at 6.) Plaintiff's argues that the Paragraph

15  6 of the Loan Agreement "expressly bars" PHEAA from either entering or communicating

16  Plaintiff's default until PHEAA conducts "a review of the debt before the default is

17  reported [to national credit reporting bureaus]." (Doc. 125 at 8.) This misreads to the Loan

18  Agreement to mandate PHEAA's review. Plaintiff misreads the agreement's grant of a

19  right to *timely petition* PHEAA for a review with an inviolate precondition that PHEAA

20  conduct that review. (*See id.*) The Loan Agreement does assign certain responsibilities to

21  PHEAA—to notify Plaintiff in advance of default, to wait thirty days prior to disclosing

22  Plaintiff's default, to promptly respond to Plaintiff's request for review, and, implicitly, to

23  conduct that review when appropriate—all of which PHEAA complied with. (*See* Doc. 98-

24  1 at 6 ⁋ 6.) Lastly, as discussed previously, Plaintiff's invocation of PHEAA's July 2019

25  correspondence is a red herring. (*See* Doc. 125 at 8.) Plaintiff's request (and PHEAA's July

26  2019 responses) concern his rights prior to *collection* of his debts, not the *reporting* of his

---

[12] Plaintiff also claims false light and libel. Those claims, like his defamation claims, fail for reasons discussed in the two prior orders dismissing his Second Amended Complaint's claims against PHEAA and Navient. (*See* Docs. 117, 123.)

default. (*Compare* Doc. 125-1 at 4 (instructing a debtor how "To Object in Writing to the Collection of the Debt") *with* Doc. 98-1 at 6 ⁋ 6 (outlining a borrower's rights and responsibilities prior to "Credit Bureau Notification")). The Court's earlier analysis on this issue remains undisturbed. With the veracity of PHEAA's report established, Plaintiff cannot state a defamation claim under any set of facts.

### b. Count 4: FCRA Claim

Argument over Plaintiff's FRCA claim against PHEAA largely duplicates the analysis of the defamation claim above. The Court previously dismissed Plaintiff's FCRA claims because he could not satisfy the first element of a cause of action under 15 U.S.C. § 1681s-2(b)—that there was an inaccuracy in his credit report. (Doc. 116 at 6.) That has not changed. The only change to Plaintiff's previously dismissed FCRA claim is an allegation that PHEAA violated a Loan Agreement provision requiring notice prior to the report of default to credit reporting agencies. (*Compare* Doc. 39, Count 2 *with* Doc. 108-1, Count 4.) Again, the question of notice does not distract from the accuracy of PHEAA's report. Plaintiff's loan was in default. PHEAA is statutorily mandated to report that default. *See* 34 C.F.R. § 682.410(b)(5).[13] Like the defamation claim above, Plaintiff's FRCA claim is futile.

### c. Count 9: Breach of Loan Agreement

Amending from the dismissal of his previous breach of loan agreement claim, (*see* Doc. 116 at 6), Plaintiff now alleges that PHEAA breached his loan agreement by refusing to provide him notice of the impending report his default to credit reporting agencies. (*See* Doc. 108-1 at ⁋⁋ 267-72.) To state a claim here, Plaintiff must allege that "(1) a contract exists between the plaintiff and the defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to the plaintiff." *Nerdig v. Electric Ins. Co.*, No. CV-17-C1859-PHX-GMS, 2018 WL 4184926, at *3 (D. Ariz. Aug. 31, 2018). PHEAA contends

---

[13] Even when a borrower, like Plaintiff here, timely requests administrative review of his records, PHEAA "may continue reporting the debt to consumer reporting agencies until it determines that the borrower has demonstrated that the loan obligation is not legally enforceable or that alternative payment arrangements satisfactory to the agency have been made with the borrower." 34 C.F.R. § 682.410(b)(5)(iv)(A).

1  Plaintiff cannot satisfy the second or third elements under any set of facts. The Court

2  agrees.

3      First, the Court does not accept Plaintiff's invitation to treat this as a factual issue

4  properly resolved after discovery. A court my deny leave to amend due to futility or legal

5  insufficiency if the amendment would fail a motion to dismiss under Rule 12(b)(6). *Miller*

6  *v. Rykof-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Thus, accepting the factual

7  allegations as true, a court may dismiss a complaint where "there is no cognizable legal

8  theory or an absence of sufficient facts alleged to support a cognizable legal theory."

9  *Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007) (citation omitted). The crux of

10  Plaintiff's argument is that discovery may show that PHEAA breached the loan agreement

11  by failing to diligently inspect the records furnished to PHEAA by Navient upon Plaintiff's

12  default. Because those records may show Plaintiff's "correct" address, Plaintiff argues the

13  question is best reserved for discovery. But Plaintiff, in his proposed amendments, also

14  concedes that PHEAA complied with the terms of the loan agreement. He agrees PHEAA

15  mailed notice to Plaintiff using an address furnished by Navient exactly as the loan

16  agreement requires. (*See* Doc. 23-1 at 4 ("Any notice required to be given to me will be

17  effective if mailed by first class mail the latest address the lender has for me"); 4AC ￢￢ 95-

18  96 (acknowledging that Navient "informed Defendant PHEAA that . . . Plaintiff's then-

19  permanent address was in Phoenix, Arizona").) By his own admission, Plaintiff's

20  amendment here is likely futile. *See Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783

21  n.1 (9th Cir. 1997) (recognizing that a "plaintiff may plead h[im]self out of court" if he

22  "plead[s] facts which establish that he cannot prevail on his . . . claim") (citation and

23  internal quotation marks omitted).

24      Second, Plaintiff does not successfully allege that damages resulted from the alleged

25  breach. Plaintiff argues that PHEAA's alleged failure to mail notice to the correct address

26  resulted in the loss of a federal student aid award of not more than $20,000. (Doc. 125 at

27  10.) But Plaintiff admits that PHEAA furnished notice to the address provided by Navient

28  and that he eventually received such notice and submitted a request for review. (Doc. 108-

1 ¶¶ 95-96, 139-40, 143, 151-52.) There is no question as to whether Plaintiff had defaulted on his loan obligations (he had). (*See* Doc. 116 at 6.) Further, as discussed above, § 682.410(b)(5) requires PHEAA to disclose that default and, further, allows PHEAA to continue reporting a debtor's default until it determines that the loan obligation is not legally enforceable, even when a debtor timely petitions for PHEAA's review. *See supra* n.5. Thus, Plaintiff cannot satisfy the damages element of his breach of loan agreement claim.

### d. Count 11: Negligent Misrepresentation

Plaintiff also claims that PHEAA negligently misrepresented that it would, as required by his loan agreement, provide notice and opportunity to seek review of his debt prior to reporting his default to credit reporting agencies. (4AC ¶¶ 286-300.)

In its response, PHEAA argues that Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine, "a common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." *Flagstaff Afford/able Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 P.3d 664, 667 (Ariz. 2010). The losses here are purely economic and Plaintiff concedes they are "directly linked to Defendant PHEAA['s] breach of Paragraph 6 of the Loan Agreement." (Doc. 125 at 10; 4AC ¶¶ 145-47.) Although Arizona courts have yet to apply the economic loss doctrine in the context of a defaulted student loan, the Court finds the doctrine likely to bar Plaintiff's negligent misrepresentation claim, particularly where, as here, the harm allegedly suffered by a claimant is directly attributable to the alleged breach of a specified contractual provision and the foreseeable result of such breach. *See Salt River Project Agr. Imp. and Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 379-80 694 P.2d 198 (1984) (holding that "[i]f the only loss is non-accidental . . . or is of a consequential nature" contract remedies will govern "and strict liability and other tort theories will be unavailable"); *see also Del Mar Land Partners, LLC v. Stanley Consultants, Inc.*, No. CV-11-8013-PCT-PGR, 2011 WL2692959, at *4 (D. Ariz. July 12, 2011) (applying Arizona's economic loss doctrine to a bar negligent misrepresentation

claim where "the harm allegedly suffered . . . is not one that is separate and distinct from any harm that would foreseeably result from the defendant's failure to perform as the parties' contract required"). Further, as Plaintiff recognizes, cases applying the economic loss doctrine to bar tort recovery often involve "detailed contracts allocating risk of loss and specifying remedies." (Doc. 125 at 11 (citing *Cook v. Orkin Exterminating Co., Inc.* 258 P.3d 149 (Ariz. Ct. App. 2011) (considering a home extermination contract) and *Sherman v. Premier Garage Sys., LLC*, No. CV-10-0269-PHX-MHM, 2010 WL 3023320, at *4 (D. Ariz. July 30, 2010) (applying the economic loss doctrine to a residential garage door contract)).) Although applied in a different context, this case is not meaningfully different.[14]

Regardless of whether the economic loss doctrine validly applies, Plaintiff cannot satisfy the necessary elements of a negligent misrepresentation claim. To claim negligent misrepresentation a plaintiff must allege: "(1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage." *Jackson v. Wells Fargo Bank, N.A.*, No. CV-13-0617-PHX-SPL, 2015 WL 13567130, at *6 (D. Ariz. Aug. 31, 2015). PHEAA argues that Plaintiff cannot satisfy the first four elements. (Doc. 119 at 12.) It is likely PHEAA is correct—this claim is unlikely to survive an attempted dismissal. As set forth previously, Plaintiff himself alleges facts that establish PHEAA largely complied with the Loan Agreement. (*See* 4AC ⁋⁋ 107, 151-52.) The facts alleged by the Fourth Amended Complaint—establishing PHEAA sent notice to Plaintiff based on the address provided by Navient—make satisfying the first, second, and third elements implausible.

---

[14] The fact that the Loan Agreement's detailed remedies and risk of loss apportionment is statutorily mandated rather than strictly bargained-for by the parties is of little consequence. *Cf. Keller v. GC Servs. L.P.*, No. 13-cv-1654, 2013 WL 3213338, at *3 n.6 (E.D. Penn. Jun. 23, 2013) (finding in the student loan context, that the economic loss doctrine not applicable to a claim resting on deceptive or fraudulent communication extraneous to the contract at issue).

### e. Count 12: Tortious Interference with a Contract

Plaintiff's final claim against PHEAA includes all Defendants and alleges tortious interference with a contract, namely his "Uniform Conditions of Supervised Probation" following his release from prison.[15] (*See* Doc. 108-1 at ¶ 304.) Tortious contract interference requires (1) a valid contractual relationship, (2) the defendant's knowledge of the relationship, (3) intentional interference inducing or causing breach, (4) resultant damage to the property whose relationship has been disrupted, and (5) proof that the defendant acted improperly. *AGA Shareholders, LLC v. CSK Auto, Inc.*, 589 F.Supp. 2d 1175, 1190 (D. Ariz. Nov. 21, 2008). Plaintiff's argument boils down to an allegation that by reporting his default, PHEAA prevented him from obtaining federal student aid to attend community college. But, as Defendants counter, Plaintiff's release conditions do not require he attend school and are silent regarding the provision of any student loans. (Doc. 119-1 at 1-5 (mandating Plaintiff "seek, obtain, and maintain employment . . . *and/or* attend school.").) Plaintiff's claim is deficient for this reason alone.[16]

### 2. Proposed Amendments as to Navient, Bank of NY ELT SLMA Trusts, and NELC[17]

### a. "New" Defendants

Navient takes specific issue with the proposed Fourth Amended Complaint's addition of Defendants Navient Corporation, Bank of NY ELT SLMA Trusts, and NELC.[18] (Doc. 117 at 9-10.) Regarding Bank of NY ELT SLMA Trusts, Plaintiff provides nothing aside from a conclusory allegation it is the alter ego of SLM or Navient to establish it has any connection to this action.[19] (*See* 4AC ¶ 12.) The Court agrees that Plaintiff's broad,

---

[15] The Court may also consider Plaintiff's "Uniform Conditions of Supervised Probation" without converting the motion into a motion for summary judgment for reasons explained *supra* at 7 n.10.

[16] And as discussed previously, *supra* p. 10, Plaintiff cannot establish the damages element of his claim.

[17] The following analysis focuses on arguments raised by Defendants Navient Solutions, LLC, Navient Education Loan Corporation and Sallie Mae Bank in Doc. 117.

[18] NELC, formerly known as SLM Education Corporation, has already appeared in this action and is also included in the proposed Fourth Amended Complaint. Thus, even if not futile, further amendment is likely necessary to clarify the claims against the parties.

[19] Plaintiff does not elucidate Bank of NY ELT SLMA Trust's relationship to Plaintiff, to the facts supporting his complaint, or respond to the argument raised in Navient's response.

conclusory, and unsupported claims against Bank of NY ELT SMLA Trusts are futile. Plaintiff's claims against Navient Corporation are also futile. As with Bank of NY ELT SLMA Trusts, it is unclear what connection Navient Corporation, the parent holding company of NSL, has to this dispute. *United States v. Bestfoods*, 524 U.S. 51, 61, 118 S.Ct. 1876, 1884, 141 L.Ed.2d 43 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries.") Navient Corporation's (lack of) connection to the dispute is attested to. (*See* Doc. 118-1) Plaintiff does not reply to this information or argument. (*See* Doc. 120.)

### b. Defamation and FRCA Claims—Counts 1-4

Plaintiff's "defamation/false light/libel" claims fail for reasons discussed ad nauseam in prior motions and orders. *See supra* at 7-8. Recognizing that, as Navient now argues, the issue of whether any singular defendant breached the loan agreement by failing to provide sufficient notice of Plaintiff's default to the correct address is distinct from Plaintiff's failure to make payments on his loans, the Court found that no "false information" or "false publication" by Defendants was possible. Plaintiff's amendments do not change this analysis.

Plaintiff attempts to sidestep this roadblock by arguing that Defendants' "daily material breaches" excused his performance (and thus negates his default) under the loan agreement. This argument also fails. First, even indulging Plaintiff's chosen interpretation of Defendants' conduct as "material breaches" of the Loan Agreement, it is unclear exactly how this erases his prior default. The alleged breaches occurred *after* Plaintiff defaulted by failing to make the required payments and meet his loan obligations. He does not explain how Defendants' allegedly improper notice excuses the failure to repay his loan in the past. Second, stealing a page from Plaintiff's book, it is clear one party did materially breach the loan agreement—Plaintiff himself. Again, there is no dispute regarding Plaintiff's failure in this regard. The proposed amendments fail to plausibly state a claim that alters this

---

(Doc. 117 at 10.)

- 14 -

reasoning.

### c. Count 10: Negligent Performance

Count 10 of Plaintiff's proposed Fourth Amended Complaint adds a new cause of action alleging that Navient Corporation, NSL, and NELC committed negligent performance of an undertaking in violating the "Good Samaritan Doctrine." (4AC ⁋ 282 (citing *McCutchen v. Hill*, 147 Ariz. 401, 404 (1985)).)

To Defendants, this cause of action is likely time-barred by the applicable two-year statute of limitations and barred by the economic loss doctrine (as to NELC).[20] Both Plaintiff and Defendants agree a two-year statute of limitations applies. *See Rowland v. Kellogg Brown and Root, Inc.*, 210 Ariz. 586, 588, 898 P.2d 964 (Ariz. Ct. App. 2005) (applying A.R.S. § 12-542). They differ, however, regarding when the cause of action accrued. A cause of action accrues, and the statute of limitations commences, when one party can sue another. *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588, 809 P.2d 964 (Ariz. 1995). Put otherwise, a cause of action "does not accrue until a plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Id.* Plaintiff dates accrual to a November 1, 2017 letter from Sallie Mae and Navient to Plaintiff which makes Plaintiff's cause of action timely. (4AC ⁋ 115.) Defendants point to the November 23, 2016 through June 2, 2017 time period wherein "Navient's negligent performance" caused his loan to be placed in default. (*Id.* ⁋⁋ 93, 284.) Essentially, Plaintiff points to when he affirmatively knew the facts underlying his claim and Defendants to when he should have known (in reasonable diligence). The Court agrees the claim is likely time-barred. By his own admission, Plaintiff knew his attempts to inform Defendants that his address and request a deferment had changed failed. (*Id.* ⁋ 69.) He also attests that as early as September 2015, he knew he qualified for a deferment based on his inability to meet his loan obligations. (*Id.* ⁋⁋ 63-74.) Thus, by November 23, 2016—the earliest date by which Defendants allegedly reported Plaintiff's default—Plaintiff had sufficient knowledge to appreciate the risk of impending default and, "in the exercise of

---

[20] Application of the economic loss doctrine to all negligence-based claims is explored in analysis of Count 11. *See supra* p. 10. That analysis likewise applies here.

- 15 -

reasonable diligence, should [have] know[n] the facts underlying the cause." *Gust*, 182 Ariz. at 588.

The claim likely fails on its merits too.[21] Plaintiff's allegations fall outside the narrow circumstances where the Good Samaritan Doctrine applies. In the loan servicing context, Arizona courts have only applied the doctrine when: (1) a lender, or its agent/representative, induces a borrower to default on his loan by promising a loan modification in the event of default; (2) the borrower, relying on that promise to modify the loan, subsequently defaults; (3) after the default, the lender or its agent/representative negligently processes or fails to process the loan modification, or due to similar negligence, the borrower is not granted the loan modification; and (4) based on the default, the lenders subsequently forecloses on the borrower's property. *Steinberger v. McVey ex rel. County of Maricopa*, 234 Ariz. 125, 138, 318 P.3d 419 (Ariz. Ct. App. 2014). Here, Plaintiff fails to allege any discussion between his lender and any agent or representative that induced his default. Mere compliance with the terms of his Loan Agreement and attempts to exercise his rights under the agreement do not suffice. This cause of action, too, is futile.

### ii. Undue Delay

Plaintiff's latest attempted amendment comes nearly a year after he filed his first Complaint. (*See* Doc. 1.) This delay, while not alone enough to support denial, is nevertheless relevant. *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1319-20 (9th Cir. 1984). "Whether the moving party knew or should have known the facts and theories raised in the proposed amendment at the time it filed its original pleadings is a relevant consideration in assessing untimeliness." *Castro v. City of Union City*, No. 14-cv-00272-MEJ, 2015 WL 3799521, 7 (N.D. Cal. 2015) (citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)). Accordingly, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the

---

[21] A claim for increased risk of harm under the "Good Samaritan Doctrine" requires a plaintiff allege: (1) defendants undertook to render services to the plaintiff that they should have recognized were necessary for the protection of the plaintiff's property; (2) the defendants' failure to exercise reasonable care while doing so increased the risk of harm to the plaintiff; and (3) the plaintiff was in fact harmed because of the defendants' actions. *Steinberger*, 234 Ariz. at 138.

party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). "At some point, . . . a party may not respond to an adverse ruling by claiming that another theory not previously advanced provides a possible [ground] for relief and should be considered." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (quotation marks omitted). The fundamental facts and legal theories supporting Plaintiff's claims have changed little, if at all, from the outset of this case on August 31, 2018. (*See* Doc. 1.) Further, Plaintiff's attempts to include newly discovered claims and factual allegations, as discussed above, are likely futile. The drawn-out nature of the early stages of these proceedings also weighs in favor of denying Plaintiff's motion.

### iii.   Prejudice to the Opposing Parties

PHEAA argues that granting Plaintiff leave to amend his Complaint for the fourth time would be unduly prejudicial. (Doc. 119 at 15-16.) "[T]he inquiry into prejudice when considering a motion for leave to amend is limited to the prejudice to the opposing party by virtue of allowance of the amendment." *EEOC v. SWMW Management, Inc.*, No. CV-08-0946-PHX-GMS, 2009 WL 1097543, at *4 (D. Ariz. Apr. 22, 2009). Prejudice, "the touchstone of the inquiry under rule 15(a)," carries the outsized weight. *Lone Star Ladies Inv. Club v. Scholtzky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987). Some types of amendment incur outsized cost. Those that "alter the nature of the litigation or require [a] [d]efendant to change its litigation strategy" are particularly prone to cause undue prejudice. *See Weber*, 2016 WL 8114210, at *3 (citing *Morongo Band of Mission Indians v. Rose*, 893 F.3d 1074, 1079 (9th Cir. 1990)). PHEAA sees Plaintiff's amendments in this light. Looking to the fact that, to date, Plaintiff's five versions of his Complaint include five different sets of claims and allegations against PHEAA, all found to be insufficient, the Court agrees. The revolving cycle of separate challenges reflect the evolving and unsettled legal theories that undergird Plaintiff's claims against PHEAA and Defendants generally. Unsurprisingly, Defendants have found crafting a defense strategy nearly impossible and the Court

recognizes the clear prejudice of allowing endless amendments invoking distinct, meritless claims.

As discussed previously, the timing of Plaintiff's motion certainly does not help. Indeed, a court could find the seeds of bad faith in Plaintiff's instant motion to amend—a surprise filing submitted the night before oral argument on pending (and eventually successful) motions to dismiss. The cases cited by Defendants concern similar "eleventh hour" amendment attempts, albeit in more advanced stages of proceedings. *See Roberts v. Arizona Board of Regents*, 661 F.2d 796 798, (9th Cir. 1981) (summary judgment); *Schlacter-Jones v. General Tel.*, 936 F.2d 435, 443 (9th Cir. 1991) (summary judgment); *M/V/ American Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (pending motion for summary judgment). While these cases thus do not guide the Court's judgment, their overarching lesson is well-taken and Defendants' claims of prejudice are well-founded.[22]

## IV. CONCLUSION

It is well-settled in this circuit that, absent a strong showing of one of the factors—futility, bad faith, undue delay, and prejudice to the opposing party—there exists a presumption under Rule 15(a) in favor of granting leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Here however, on Plaintiff's fourth attempt to amend his claims, the Court's discretion to deny leave to amend is at its peak. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Props., Inc.*, 866 F.2d at 1160 (quotation marks omitted). Three of the factors warrant the denial of Plaintiff's proposed amendment.

Accordingly,

**IT IS ORDERED** DENYING Plaintiff's Motion to Amend Complaint, (Doc. 108).

**IT IS FURTHER ORDERED** DISMISSING with prejudice Plaintiff's Fourth Amended Complaint, (Doc. 108-1).

---

[22] Regardless of his intent, Plaintiff's twilight amendment filing undoubtedly complicated and delayed a decision on the merits of pending motions to dismiss, interfered with the expeditious consideration of his claims, frustrated efforts to defend against them, and prejudiced Defendants.

1      **IT IS FURTHER ORDERED** lifting the stay, (Doc. 115), on Defendant Navient

2    Education Loan Corporation's and Sallie Mae Bank's Motion to Dismiss Pursuant to Fed.

3    R. Civ. P. 12(b)(6), (Doc. 97), and ordering Plaintiff to file a response no later than April

4    7, 2020 and Defendants to file replies no later than April 14, 2020.

5           Dated this 30th day of March, 2020.

6

7

8                          Honorable Susan M. Brnovich
                            United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28