**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Devin Andrich,<br><br>              Plaintiff,<br><br>v.<br><br>Navient Solutions Incorporated, et al.,<br><br>              Defendants. | No. CV-18-02766-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendants Navient Education Loan Corporation's and Sallie Mae Bank's motion to dismiss Plaintiff's Second Amended Complaint. (Doc. 97, "Mot.".) Defendants filed corresponding exhibits, including the Loan Agreement and Promissory Note referenced in Plaintiff's Second Amended Complaint ("SAC").[1] (Doc. 98; *see also* Doc. 39, "SAC"). Plaintiff responded to the Motion, (Doc. 131, "Resp."), and Defendants replied, (Doc. 132, "Reply"). Plaintiff requested oral argument in his response, but the Court elects to resolve the motion without it. *See* L.R. Civ 7.2(f).

**I.   BACKGROUND**

Plaintiff initiated this action on August 31, 2018. (Doc. 1). He filed a Second Amended Complaint on December 28, 2018, naming as defendants (1) SLM Corporation, (2) SLM Education Loan Corporation, (3) Navient Solutions, Inc., (4) Navient Solutions,

---

[1] The Court can consider the Loan Agreement, attached as an exhibit to Navient's earlier motion to dismiss, without converting the motion into a motion for summary judgment "because the complaint refers to the Agreement, it is central to one of the plaintiff's breach of contract claims, and no party questions the authenticity of the document." *BioD, LLC v. Amnio Tech.*, No 2:13-cv-1670-HRH, 2014 WL 11515617, at *2 n.11 (D. Ariz. Jul. 22, 2014).

LLC, (5) Pennsylvania Higher Education Assistance Agency ("PHEAA"), (6) Performant Recovery Services, Inc., and (7) DOES I-X, as individuals or entities. Defendant Performant Recovery Services, Inc. was dismissed from the action on January 22, 2019. (Doc. 53). Plaintiff refers to Defendants SLM Corporation and SLM Education Loan Corporation collectively as "Sallie Mae." (SAC ¶ 4). Plaintiff refers to Defendants Navient Solutions, Inc. and Navient Solutions, LLC collectively as "Navient." (SAC ¶ 7). However, due to counsels' representations of entity name changes that have occurred over the time period at issue, the Court will refer to the Defendants at issue in this Order as follows: individually, the Court refers to Defendant SLM Education Loan Corporation as Navient Education Loan Corporation ("NELC") and Defendant SLM Corporation as Sallie Mae Bank ("SMB") and, collectively, as "Defendants". The Court will refer to Navient Solutions, Inc. and Navient Solutions, LLC collectively as "NSL."

The following facts are assumed to be true for the purpose of deciding this Motion.[2] Plaintiff entered into a loan agreement with NELC on or about October 5, 2003 (the "Loan Agreement"). (SAC ¶ 18). NELC identified SallieMae Servicing Corporation as the loan servicer under the Loan Agreement. (SAC ¶ 31). Sometime between 2003 and 2014, NSL informed Plaintiff via writing that Plaintiff's Loan Agreement had been amended or modified to name NSL as Defendants loan servicer under Plaintiff's Loan Agreement. (SAC ¶ 33). Defendants and its assignees entered into an agreement with PHEAA regarding the consolidation and servicing of Plaintiff's consolidated student loans (the "Guarantor Agreement").[3] (SAC ¶ 39). Plaintiff alleges that he is an intended third-party beneficiary under the terms of the Guarantor Agreement. (SAC ¶ 40). Plaintiff alleges that the terms of the Guarantor Agreement require Defendants and its assigned loan servicer to:

- deliver notices and correspondence to the borrower's permanent address that the borrower provides to Defendants and its loan servicer

---

[2] This Order focuses only on the aspects of Plaintiff's allegations that relate to the counts against SLM Education Loan Corporation, now known as Navient Education Loan Corporation ("NELC"), and Sallie Mae Bank ("SMB"), improperly named in the SAC.
[3] A copy of the Guarantor Agreement has not been submitted with any of the filings.

- provide the borrower with deferment or forbearance applications upon the borrower's written request to Defendants or its loan servicer
- review the borrower's deferment or forbearance applications, prior to Defendants or its loan servicer declaring a default under the Loan Agreement with the borrower
- report to Defendant PHEAA the results of reviewing a borrower's deferment or forbearance application when declaring a default under the Loan Agreement with the borrower

(SAC ¶¶ 41–44).

On July 10, 2015, Plaintiff began serving a 3 1/2-year prison sentence at the Arizona Department of Corrections. (SAC ¶¶ 49–50). He alleges that he notified NSL of address changes throughout his time in prison and also requested deferment or forbearance and that NSL did not respond to Plaintiff's then-address.

After Plaintiff's release from prison, he mailed a letter via United States mail to Defendants and NSL updating his permanent address and requesting a student loan payment deferment or forbearance. (SAC ¶¶ 66–67). On November 1, 2017, Defendants and NSL mailed a letter to Plaintiff, stating that they could not approve Plaintiff for a student loan payment deferment or forbearance under the Loan Agreement because Defendants and NSL had entered Plaintiff's default under the Loan Agreement. (SAC ¶ 68). Upon entering Plaintiff's default under the Loan Agreement, Defendants and NSL subsequently sold or otherwise assigned its rights under the Loan Agreement to Defendant PHEAA, the guarantor of the loan. (SAC ¶¶ 30, 71). Plaintiff alleges that PHEAA then made numerous false statements to several credit reporting agencies that Plaintiff defaulted under the Loan Agreement, (SAC ¶ 72), and that PHEAA would not cure Defendants and NSL's breaches of the Loan Agreement. (SAC ¶¶ 85, 90).

In the SAC, Plaintiff initially brought eight causes of action against Defendants (NELC and SMB), but later withdrew four of these claims.[4] The following claims remain: (1) violation of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 *et seq.* for false statements to Credit Reporting Agencies ("CRA's"); (2) defamation; (3) breach of

---

[4] In his response, Plaintiff withdraws his FCRA claim (Count One), negligent misrepresentation claim (Count Seven), fraud claim (Count Eight), and breach of guarantor agreement claim (Count Ten). (Resp. at 14).

- 3 -

the Loan Agreement (Count Nine); and (4) breach of the covenant of good faith and fair dealing.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a

motion for summary judgment." *Id.* at 908.

## III. DISCUSSION

### A. The FCRA

In Count Three, Plaintiff alleges that Defendants violated the FCRA when making false statements to credit reporting agencies. "Congress enacted the [FCRA] to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (internal citations and quotation marks omitted). "[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to [credit reporting agencies], called 'furnishers' in the statute." *Id.* Under Count Three, Plaintiff asserts Defendants violated 15 U.S.C. § 1681s-2(b)(1): "Duties of furnishers of information upon notice of dispute." Subsection 1681s-2(b)(1) provides that after receiving a notice of dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–
> > (i) modify that item of information;
> > (ii) delete that item of information; or
> > (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). "These duties arise only after the furnisher receives notice of dispute from a [credit reporting agency]; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Gorman*, 584 F.3d at 1154. On inquiry by a credit reporting agency ("CRA"), a furnisher must "conduct at least

a reasonable, non-cursory investigation[.]"[5] *Id.* at 1157. In order to state a claim under 15 U.S.C. § 1681s-2(b), plaintiff must

> plead the following four elements . . . against a credit furnisher: (1) a credit reporting inaccuracy existed on plaintiff's credit report; (2) plaintiff notified the consumer reporting agency that plaintiff disputed the reporting as inaccurate; (3) the consumer reporting agency notified the furnisher of the alleged inaccurate information of the dispute; and (4) the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. 1681s-2(b)(1)(A)–(E).

*Cook v. Mountain Am. Fed. Credit Union*, No. 2:18-CV-1548-HRH, 2018 WL 3707922, at *3 (D. Ariz. Aug. 3, 2018) (internal quotation marks and citations omitted). "[A]n item on a credit report can be 'incomplete or inaccurate' . . . 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Gorman*, 584 F.3d at 1163).

### 1. Plaintiff's Claims Against SMB

As a preliminary matter, Defendants argue that all Plaintiff's claims against SMB should be dismissed because "Plaintiff 'is not a customer of SMB, and [ ] SMB does not hold or service any student loans issued to or cosigned by [Plaintiff].'" (Mot. at 7 (quoting Doc. 98, Ex. A, "Noren Decl." ¶ 3).) Plaintiff does not contest that SMB has no connection to the SAC's alleged conduct and "does not oppose dismissing parties not involved in this case," but instead implies that the lack of discovery "compromises Plaintiff's ability to litigate this case." (Resp. at 2 n.1.) Plaintiff's failure to contest SMB's connection to the SAC's factual allegations, places the claims against SMB at risk of dismissal. *See Giorgis v. Ogden*, No. CV-09-1174-PHX-FJM, 2009 WL 3571355, at *3 (D. Ariz. Oct. 26, 2009) ("Failure to respond to arguments raised in dispositive motions 'may be deemed a consent to the . . . granting of the motion' . . . and serves as an additional basis upon which to grant

---

[5] A consumer reporting agency "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties[.]" 15 U.S.C. § 1681a(f).

Movant's motions.") (quoting LRCiv. 7.2(i)). The claims against SMB will be dismissed.

**2. Count Three – Statements to Credit Reporting Agencies**

In Count Three, Plaintiff alleges that NELC violated the FCRA when making false statements to credit reporting agencies. Defendants argue that Plaintiff cannot state a claim under Section 1681s-2(b) for two reasons. First, they argue that Plaintiff cannot plead that "he found an inaccuracy in his credit reporting," the first element required in a FCRA claim. (Mot. at 8). Defendants assert that "[s]imply seeking forbearance or deferment did not excuse Plaintiff from making his monthly payments, or prevent NELC from determining [Plaintiff] was in default if he did not qualify for such forbearance or deferment." (*Id.*). They further assert that Plaintiff admits that he did not actually receive a forbearance or deferment. (Mot. at 9). In response, Plaintiff argues that Defendants knew the information was inaccurate because they deliberately withheld requested forbearance applications from Plaintiff. (Resp. at 9).

Defendants cite to *Fluegge v. Nationstar Mortgage, LLC*, No. 12-CV-15500, 2015 WL 4430062, at *11 (E.D. Mich. July 20, 2015), where the court stated that plaintiff could not show that the allegedly adverse information was inaccurate. The *Fluegge* court reasoned that a mortgage remained in force even if the plaintiff could state a claim for breach of contract, and that the reports that plaintiff was in default on the Note were therefore accurate. *Id.* The same reasoning applies here. Plaintiff does not deny that the account was in default, but rather argues that he should have been granted a deferment. As pleaded, Plaintiff has not alleged that the information was "patently incorrect" or "misleading," as there is no question that the account was in default. Plaintiff cannot satisfy the first element of this cause of action. Accordingly, Count Three is dismissed as it relates to Defendants.[6]

---

[6] Plaintiff's lack of response to Defendants argument regarding his FCRA claim in Count Three provides an additional reason to dismiss the claim. *See Giorgis v. Ogden*, No. CV-09-1174-PHX-FJM, 2009 WL 3571355, at *3 (D. Ariz. Oct. 26, 2009) ("Failure to respond to arguments raised in dispositive motions 'may be deemed a consent to the . . . granting of the motion' . . . and serves as an additional basis upon which to grant Movant's motions.") (quoting LRCiv. 7.2(i)). As discussed, Plaintiff abandoned the SAC's other FCRA claim in Count One. (Resp. at 14.)

### 3. Count Two—Defamation/False Light

In Count Two, Plaintiff asserts claims of "Defamation/False Light/Libel Against Plaintiff When Declaring a Default of Plaintiff's Loan Agreement to Defendant PHEAA – Assuming That Defendant PHEAA Is Not a Consumer Reporting Agency." (SAC at 21). Under Arizona law, there are three elements of a defamation claim: "(1) defendant made a false defamatory statement about plaintiff, (2) defendant published the statement to a third party, and (3) defendant knew the statement was false, acted in reckless disregard of whether the statement was true or false, or negligently failed to ascertain the truth or falsity of the statement." *Farrell v. Hitchin' Post Trailer Ranch*, No. 1 CA-CV 11-0011, 2011 WL 6057930, at *2 (Ariz. Ct. App. Dec. 6, 2011) (citing *Peagler v. Phoenix Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977)). "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989). While the distinction between defamation and false light invasion of privacy is subtle, they are recognized as separate torts in Arizona. *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 449–50 (Ariz. Ct. App. 2015). "To establish a claim for false light invasion of privacy, a plaintiff must show (1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Id.* at 450; *see also Fedoseev v. Alexandrovich*, No. CV-05-536-TUC-DCB, 2006 WL 964281, at *5 (D. Ariz. Apr. 11, 2006) ("To succeed on a claim for false light invasion of privacy, a plaintiff must show: (1) the defendant knowingly or recklessly; (2) gave publicity to: (3) false information or innuendo about the plaintiff; (4) that a reasonable person would find highly offensive." (citing *Hart v. Seven Resorts, Inc.*, 947 P.2d 846, 854 (Ariz. Ct. App. 1997)).

Defendants argue that "[t]o the extent the alleged statement(s) included Plaintiff's default on the Loan, such a statement cannot form the basis of a defamation claim – it was

true." (Mot. at 10). As stated above, Plaintiff does not dispute that the account was in default, but rather argues that such default was improper due to his requests for deferment or forbearance. Accordingly, Plaintiff has not pled that a "false publication" or "false information" was published and Count Two is dismissed as it relates to Defendants.

### 4. Count Five—Breach of the Loan Agreement

Defendants argue that Plaintiff's breach of contract claim fails for multiple reasons. First, they contend the claim fails as it relates to SMB because SMB "is not a party or signatory to the Loan." (Mot. at 11). Again, Plaintiff does not contest SMB's lack of involvement.[7] Given the lack of disagreement on this point, the claim is dismissed against SMB.

Defendants' second argument aims at dismissing the claim as it relates to NELC, the lender of Plaintiff's student loans.[8] They argue that the terms of the loan agreement do not grant the rights that Plaintiff reads into them. (Mot. at 11). That is, the SAC "misquotes and misrepresents" Plaintiff's rights and Defendants duties under the loan agreement "in an effort to create contractual obligations that do not exist." (Reply at 4). Specifically, Plaintiff alleges that the Loan Agreement "explicitly states" that "[u]nder the terms of the Loan Agreement and Paragraph 8 of Borrower's Rights and Responsibilities:"

- Upon request, [Sallie Mae or its designated assignee] will provide [Plaintiff] with a deferment application that explains [Plaintiff's] eligibility requirements,' to Plaintiff's permanent

---

[7] Finding a lack of contractual privity, the Court previously dismissed similarly situated parties in earlier motions to dismiss. (*See* Docs. 116, 123). That logic applies here. *See Mazzei v. Money Store*, 308 F.R.D. 92, 109 (S.D.N.Y. 2015), *aff'd*, 829 F.3d 260 (2d Cir. 2016) ("A number of courts have addressed whether servicers that are nonsignatories to mortgage loan agreements may be held liable by the mortgagor in a breach of contract action. A significant majority of courts have concluded that loan servicers are not in privity of contract with mortgagors where the servicers did not sign a contract with the mortgagors or expressly assume liability.") (collecting cases); *Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010) ("The fact that Aurora entered into a contract with HSA to service Plaintiff's loan does not create contractual privity between Aurora and Plaintiff.").

[8] The Court previously dismissed Plaintiff's "Breach of Loan Agreement" claims against his former loan servicer, NSL, and his loan guarantor, PHEAA. (*See* Docs. 116, 123.) Unlike Plaintiff's claims against NSL, NELC does not contend they are not party to the Loan Agreement. *Cf. Erickson v. Green Tree Servicing LLC*, No. CV-14-08089-PCT-NVW, 2015 WL 3507350, at *23 (D. Ariz. June 4, 2015) (dismissing claim for breach of contract because there was no contractual privity between loan servicer and debtor).

> address.
> - Plaintiff has the right to defer or postpone payments under the Loan Agreement to Defendant Sallie Mae or its designated assignee, while Plaintiff is ' . . . experiencing an economic hardship as determined by federal law.'
> - Defendant Sallie Mae or its designated assignee is required to grant Plaintiff a forbearance if Plaintiff has, 'a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of [Plaintiff's] total monthly gross income.

(SAC ¶¶ 26-28). Despite Defendants suggestion that the SAC misrepresents Plaintiff's rights, the Promissory Note provides borrowers a qualified right to a deferment. Deferments are available to borrowers who have consolidated their loans in five circumstances, including when a borrower experiences an "economic hardship as determined by federal law." (Doc. 98-3 at 6). To receive the deferment, a borrower "must request the lender to process a deferment and provide evidence that verifies the eligibility." (*Id.*). Plaintiff alleges he did so on multiple occasions. (SAC ¶¶ 28, 35-37, 52-55, 57-60, 140, 146). The Note does not provide Plaintiff an unlimited right to a forbearance. Rather, the note expressly states that while the "lender is generally not required to grant a forbearance and may require me to provide my reasons for the request . . . [a] lender *may* grant me a forbearance to eliminate a delinquency." Certain "circumstances . . . require" a lender to grant a forbearance. (Doc. 98-3 at 6.) Among these limited circumstances, a lender must grant a forbearance when the borrower has "a monthly debt burden for Title IV loans that collectively exceeds 20% of my total monthly gross income (for up to three years)." (Doc. 98-3 at 6.) Again, Plaintiff alleges he requested this forbearance and was qualified. (SAC ¶¶ 35-37, 52-55, 57-60).

Third, even assuming the terms of the loan agreement support Plaintiff's claim, Defendants argue the claim "must fail because [Plaintiff] has failed to allege any damages arising from any perceived breach of the Loan." (Mot. at 12). They contend that Plaintiff's damage request in the amount of "not less than One Hundred Ninety One Thousand Six Hundred Seven Dollars and 43/100 ($191,607.43)," (SAC ¶ 148), does not explain "how

NELC's alleged failure to update Plaintiff's mailing address, or evaluate Plaintiff for a deferment or forbearance, caused his damages." Defendants argument fails.  First, the SAC contradicts Defendants' characterization.  The SAC alleges and Promissory Note provides that Plaintiff has a right to a deferment and forbearance in certain circumstances.  Plaintiff further avers he complied with the Note's requirement to request a deferment or forbearance from his lender.  (SAC ¶¶ 35-37, 52-55, 57-60.)  Second, Plaintiff's identified damages "arise naturally from the breach itself or which may reasonably be supposed to have been within the contemplation of the parties at the time they entered the contract." *All American School Supply v. Slavens*, 125 Ariz. 231, 609 P.2d 46, 48 (Ariz. 1980). Plaintiff alleges his default flows directly from NELC's failure to process or properly respond to his deferment and forbearance requests.  The SAC's requested damages correspond the funds required for the guarantor, PHEAA, to reinstate the Loan Agreement. (Resp. at 13.)  A party that requires a forbearance or deferment is, by definition, prone to default.  Damages that result from a lenders failure to process or respond to a request for such forbearance or deferment are within the parties contemplation at the time of contract.

Accordingly, Plaintiff's breach of contract claim will not be dismissed.

### 5.  Count Six—Breach of the Covenant of Good Faith and Fair Dealing

"Arizona 'law implies a covenant of good faith and fair dealing in every contract.'" *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986)).  "[I]mplied terms are as much of a contract as are the express terms."  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002).  "The purpose of such terms is so 'neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.'"  *Bike Fashion Corp.*, 46 P.3d at 434 (quoting *Rawlings*, 726 P.2d at 569–70).  "Arizona law recognizes that a party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely

on the party's reasonably expected benefits of the bargain." *Id.* at 435.

Defendants first argue that, with regard to SMB, Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing claim fails because there is no agreement between SMB and Plaintiff. (Mot. at 13-14). As established previously, Plaintiff fails to state a claim for breach of contract with SMB. That logic applies here as well and Plaintiff's claim against SMB fails.

However, the breach of contract claim against NELC remains. Irrespective of the viability of that claim, Defendants argue Count Six fails because "it is wholly duplicative of his breach of contract claim" and alleges only breach of express terms in the contract. (Mot. at 14). Defendants cite to *Aspect Systems, Inc. v. Lam Research Corp.*, No. 06-1620-PHX-NVW, 2006 WL 2683642, at *2 (D. Ariz. Sept. 16, 2006). There, the court held that the plaintiff's breach of the covenant of good faith and fair dealing claim failed because plaintiff had "not explained how Defendants ha[d] breached the implied covenant other than through the breach of an express contractual term." *Id.* Here, Plaintiff also alleges the breach of terms he deems express. (*See, e.g.*, SAC ¶¶ 152, 153, 154, 155). Nowhere in the Complaint does he allege, or alternatively allege, that the breaches stem from "implied" terms of the contract. Accordingly, Count Six is dismissed as also dismissed as it relates NELC.

### IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** GRANTING in part Defendants Navient Education Loan Corporation's and Sallie May Bank's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(6) and Memorandum of Points and Authorities in Support Thereof, (Doc. 97), and DENYING the motion as relates to Plaintiff's breach of loan agreement claim (Count Five) against NELC.

Dated this 6th day of May, 2020.

_____
Honorable Susan M. Brnovich
United States District Judge